In re United States of America, Petitioner.

UNITED STATES of America, Plaintiff-Appellant,

v.

Ray COWAN and Jake Jacobsen, Defendants,

Wayne O. Woodruff et al., Special Prosecutors, Appellees.

Nos. 74–3738, 74–3941.

United States Court of Appeals, Fifth Circuit.

Dec. 8, 1975.

Frank D. McCown, U. S. Atty., Ft. Worth, Tex., Henry S. Ruth, Jr., Deputy Sp. Prosecutor, Frank M. Tuerkheimer, Peter N. Kreindler, Counsel to the Sp. Prosecutor, Watergate Sp. Prosecution Force, Dept. of Justice, Washington, D. C., Sidney M. Glazer, Judith A. Metzner, Henry E. Peterson, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for the United States.

Robert M. Hill, U. S. Dist. Judge, Wayne O. Woodruff, Andrew Barr, Patrick E. Higginbotham, Dallas, Tex., Arthur Mitchell, John L. Hill, Atty. Gen., Thomas M. Pollen, Asst. Atty. Gen., Austin, Tex., Charles A. McNelis, Washington, D. C., for Jacobsen.

Bob Gibbins, Austin, Tex., for Cowan.

Before BROWN, Chief Judge, MURRAH * and WISDOM, Circuit Judges.

* Senior Circuit Judge of the Tenth Circuit, sitting by designation. This opinion was concurred in prior to Judge Murrah's death on . October 30, 1975. See *Coca Cola Co. v. Federal Trade Comm.*, 5 Cir. 1973, 475 F.2d 299, 301.

MURRAH, Circuit Judge:

The first sentence of Rule 48(a) Fed.R. Crim.P. provides that "The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate." In our case the trial judge, the Honorable Robert M. Hill, denied the United States Attorney's motion under Rule 48(a) to dismiss pending criminal proceedings in the Northern District of Texas, and upon formal declination of the government to proceed, appointed private, special prosecutors to continue the prosecution of the case. The government took a timely appeal from the order appointing the special prosecutors under 28 U.S.C. § 1291 and, in the alternative, sought a writ of mandamus to require dismissal. It is conceded that the order appointing special prosecutors is final and appealable under § 1291. Inasmuch as the order appointing the special prosecutors is necessarily based upon the power of the court under Rule 48(a) to deny the motion to dismiss, the meaning and scope of that Rule are at issue, and we need not, therefore, consider the propriety of an extraordinary writ of mandamus.

Traditionally and at common law, public prosecutions were within the exclusive control of the district attorney with the absolute power to enter a nolle prosequi at any time before the jury is impanelled "except in cases where otherwise provided in some act of Congress." Confiscation Cases, 74 U.S. 457, 20 Wall. 92, 22 L.Ed. 320. See also *United States v. Brokaw*, 60 F.Supp. 100 (S.D.Ill.1945). "The Federal Rules of Criminal Procedure have the force and effect of law. Just as a statute . . . " *Dupoint v. United States*, 388 F.2d 39, 44 (5th Cir. 1967).[1] The precise question is the ex-

1. The rules were promulgated and adopted pursuant to Public Law 675 specifically empowering the Supreme Court "to prescribe . . . rules of pleading, practice, and procedure with respect to any or all proceedings prior to and including verdict, or finding of

tent to which the phrase "by leave of court" in Rule 48(a) limits or conditions the common law power of the Attorney General acting through his subordinates to dismiss an indictment without leave of court. The question is presented on these pertinent facts.

In February of 1974, a federal grand jury in the Northern District of Texas returned a seven-count indictment against Jake Jacobsen. Six of the counts charged Jacobsen and Roy Cowan with the fraudulent misapplication of funds of a federally insured savings and loan association in San Angelo, Texas. A seventh count charged Jacobsen alone with knowingly making a false statement under oath to the grand jury. The indictment was signed by the United States Attorney for the district. After rather extensive motion practice resulting in a pretrial order in April, the case was set for trial in July. On joint motion of the parties the case was continued until a day in September due to the unavailability of a government witness.

Meanwhile and in May of the same year, the Watergate Special Prosecution Force (see 28 C.F.R. 0.37 and 0.38) and Jacobsen's Washington counsel negotiated an agreement whereunder Jacobsen agreed to plead guilty to a one-count charge to be filed in the District of Columbia alleging violation of 18 U.S.C. § 201(f) (bribing a public official) and make a full and truthful disclosure of all relevant information and documents within Jacobsen's knowledge and possession concerning matters then under investigation by the Watergate Special Prosecution Force, and if required, be a witness on any charges arising out of any such investigation. The Special Prosecution Force agreed not to press any potential charges against Jacobsen in the District of Columbia arising out of the relevant investigation. It was also a

guilty or not guilty by the court if a jury has been waived, or plea of guilty, in criminal cases in district courts of the United States . . . Such rules shall not take effect until they shall have been reported to Congress by the Attorney General at the beginning of a regular session thereof and until after the

part of the plea agreement that the government would dismiss the Texas indictment.

Apparently Jacobsen appeared before a grand jury in the District of Columbia in May giving testimony incriminating himself and others. In any event, in July the grand jury returned an indictment in the District of Columbia charging Jacobsen in one count with violation of 18 U.S.C. § 201(f) and as an unindicted co-conspirator in a conspiracy count against former Secretary of the Treasury John Connally. In August Jacobsen entered a guilty plea to the bribery count (18 U.S.C. § 201(f)). The plea was accepted and the sentence postponed. At the same time the plea agreement was filed with the clerk of the court.

In accordance with the plea agreement, the United States Attorney for the Northern District of Texas moved under Rule 48(a) to dismiss the indictment set for trial in September. A copy of the plea agreement was attached to the motion. The motion to dismiss recited that the Office of the Special Prosecutor and the Attorney General believed that Jacobsen's testimony was necessary to the investigation and prosecution of the indictment in the District of Columbia; that if it did not enter into the plea agreement, the testimony of Jacobsen in that case, or any other case in which his testimony is relevant, would be lost; that the motion to dismiss the Texas charges was made in good faith, in accordance with the plea agreement and not for purposes of harassment; and that the interest of justice will be best served by disposing of the charges against Jacobsen in this manner. A memorandum of law supporting the Attorney General's absolute discretion to dismiss the indictment even without leave of court was filed with the motion. Jacobsen's Texas counsel joined in the

close of such session, and thereafter all laws in conflict therewith shall be of no further force and effect." U. S. Statutes at Large, 76th Congress, Chapter 445, Public Law 675 (June 29, 1940). The rules were promulgated and submitted to the Congress and became effective in March, 1946.

United States Attorney's motion to dismiss. The motion was submitted in open court without further argument or testimony. On the same day and pursuant to another plea agreement, Judge Hill accepted a guilty plea by co-defendant Cowan to two counts of the Texas indictment and the United States Attorney agreed to move to dismiss the remaining counts after sentencing. Thus, all charges against Jacobsen and Cowan not disposed of by guilty pleas were made the subject of motions to dismiss by the government with consent of the defendants in accordance with the two plea agreements.

In an exhaustive opinion, the trial court asserted its discretionary power under Rule 48(a) to grant or deny the motion for leave to dismiss the Texas indictment against Jacobsen. Upon denial of the motion to dismiss, the United States Attorney filed its notice of intention not to prosecute. Whereupon, the court, asserting its inherent power to protect the public interest in these extraordinary circumstances, appointed private special prosecutors "with full authority to control the course of investigation and litigation related to the offenses charged in the indictment and to handle all aspects of the case to the same extent as the United States Attorney in any criminal prosecution."

The Attorney General stakes his claim to absolute power to dismiss the proceedings even without "leave of court" squarely upon the Doctrine of Separation of Powers as derived from the provisions of the Constitution establishing three separate, but co-equal branches of government, each supreme in its own sphere; and more particularly upon Article II, Section 3 which provides in material part that the President "shall take Care that the Laws be faithfully executed" and upon 28 U.S.C. §§ 516, 519, empowering the Attorney General as surrogate of the President to conduct or supervise all litigation in which the government is a party. The court-appointed prosecutors counter that the Doctrine of Separation of Powers implied in the Constitution does not cast the three branches of our government into water-tight compartments; that room is left for some commingling of responsibilities in the orderly administration of governmental affairs; that by the promulgation of Rule 48(a) as part of the Rules of Criminal Procedure, Congress intended to vest in the courts a shared responsibility for the dismissal of prosecutions once lodged in the court; and that the power to grant leave to dismiss a criminal prosecution carries with it the correlative power to exercise a discretion to deny leave to dismiss and, if necessary, to effectuate such denial by the appointment of private prosecutors.

To sustain the asserted absolute power to dismiss the proceedings without "leave of court," the Attorney General relies heavily on *United States v. Cox,* 342 F.2d 167 (5th Cir. 1965) and its progeny. That case involved the power of the district court to require the United States Attorney, under penalty of contempt, to sign an indictment or true bill as presented by the grand jury in accordance with Rule 7(c) Fed.R.Crim.P., which provides that an indictment "shall be signed by the attorney for the government." A majority of the en banc court sustained the government's petition to prohibit the trial judge from enforcing its contempt order and from asserting jurisdiction to require the Attorney General of the United States or the United States Attorney "to institute criminal prosecution or to take any steps in regard thereto."

After delineating the powers of the Judicial Department under Article III and of the Executive Department under Article II, Section 1 of the Constitution, Judge Jones speaking for the majority of the en banc court declared:

> "Although as a member of the bar, the attorney for the United States is an officer of the court, he is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular

case. It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions. The provision of Rule 7, requiring the signing of the indictment by the attorney for the Government, is a recognition of the power of the Government counsel to permit or not to permit the bringing of an indictment. . . . " *United States v. Cox,* supra at 171.

This succinct and forthright statement has been quoted and applied, quite correctly we think, in a variety of situations under differing circumstances, all involving the Executive's power and authority to initiate a criminal prosecution or the power of the court to dismiss on its own motion a pending prosecution. See *Smith v. United States,* 375 F.2d 243, 247 (5th Cir. 1967);[2] *Newman v. United States,* 127 U.S.App.D.C. 263, 382 F.2d 479 (1967);[3] *Inmates of Attica v. Rockefeller,* 477 F.2d 375, 379 (2d Cir. 1973);[4] *United States v. Brown,* 481 F.2d 1035, 1043 (8th Cir. 1973);[5] *United States v. Olson,* 504 F.2d 1222 (9th Cir. 1974);[6] *Powell v. Katzenbach,* 123 U.S.App.D.C. 250, 359 F.2d 234, 235 (1965);[7] *Moses v. Kennedy,* 219 F.Supp. 762 (D.D.C.1963).[8] See also *United States v. Fleming,* 215 A.2d 839 (D.C.App.1966). The exclusive authority and absolute discretion of the district attorney to decide whether to prosecute a case was apparently assumed in *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), citing Confiscation Cases, supra, and *United States v. Cox,* supra. With the exception of *Cox,* none of the cited cases dealt with Rule 48(a).

Though the Rule was not at issue in *Cox,* it came under the scrutiny of the

2. This case was a suit under the Federal Tort Claims Act for failure of the government to prosecute persons for the unlawful destruction of the complainant's property. The court held that the Tort Claims Act does not support a cause of action against the United States for omission to initiate a prosecution, because the initiation of a prosecution is within the absolute discretion of the United States Attorney. Citing inter alia the Confiscation Cases, supra and *United States v. Cox,* supra.

3. In this case the petitioner claimed that the United States Attorney violated his constitutional rights by allowing a codefendant to plead guilty to a lesser included offense under the indictment while refusing to consent to the same plea for the appellant. Judge Burger speaking for his court affirmed the absolute discretion of the United States Attorney as an executive official "as to whether or not there shall be a prosecution in a particular case. . . . [Such exclusive authority is] an incident of the constitutional separation of powers." See page 481.

4. In this case the inmates of a prison sought to compel the United States Attorney to prosecute persons who had allegedly violated certain federal and state statutes in connection with the treatment of the inmates during and following a prison uprising. The court upheld prosecutorial discretion to initiate proceedings in the absence of a statutory deterrent. The court quoted from *Cox* with the further observation that "[T]he problems inherent in the task of supervising prosecutorial decisions do not lend themselves to resolution by the judiciary. . . . [lest they become] 'superprosecutors.' " See page 380.

5. In this case, the issue was the trial judge's power to dismiss an indictment on its own motion for the failure of the government to supply the court with initial information required to determine whether a guilty plea should be accepted. On appeal the court held that "A case [was] not to be summarily dismissed because the court disagree[d] with some policy of the District Attorney's office." Citing and quoting *United States v. Fleming,* supra, and *Newman v. United States,* supra. See page 1043.

6. In an opinion by Judge Ely, the Ninth Circuit held that the district court was powerless to require the United States Attorney to elect which valid count of a multi-count indictment the government would try, and upon failure to elect, to dismiss any of the valid counts in the indictment.

7. The court upheld the trial court's dismissal of a mandamus action to require the Attorney General to initiate a criminal prosecution against a national bank and its officers. The court held that the legislative history of the statute invoked by the plaintiff, 5 U.S.C. § 311a, pertaining to investigation of crimes by government officers, disclosed no congressional intent to alter the Executive's exclusive discretion to initiate a prosecution.

8. The trial court dismissed a mandamus action to require the Attorney General to arrest and prosecute certain state and local officials for denial of petitioner's constitutional rights.

court in connection with the interpretation of Rule 7(c). The majority was apparently of the view that without the discretionary power given to the United States Attorney to prevent an indictment under 7(c) by withholding his signature, the constitutionality of Rule 48(a) would be doubtful.[9] The court accordingly justified the Rule with the observation that it was intended solely to authorize the court to protect a defendant from harassment by successive filings and dismissals. Chief Judge Brown specially concurring agreed that 48(a) "vests the unfettered discretion in the District Attorney to determine whether a prosecution is to be maintained or dismissed." He was careful, however, to acknowledge that the interpretation of 48(a) had not been directly presented and that there was no assurance the rule "might not ultimately be construed [to reserve] considerable power to the District Judge himself in determining whether to enter a dismissal on the Government's motion." See Cox at 183 n. 6. Judge Wisdom specially concurring was sure that "the district attorney has absolute control over criminal prosecutions [with power to] dismiss or refuse to prosecute . . . [t]he responsibility is wholly his." Citing *United States v. Woody,* 2 F.2d 262 (D.Mont.1924) stating the common law rule before the advent of Rule 48(a). See *Cox,* supra at 191.

The holding in *Cox* is doubtless the law on its facts, and nothing we say here is intended to derogate from it. But ours is not a *Cox* case. *Cox* involved a challenge to the power of the court to direct the commencement of a prosecution, under Rule 7(c). We are concerned with the power of the court to supervise the termination of a prosecution in being, under Rule 48(a). While the dicta in all the opinions in the *Cox* case provide a formidable preface to our inquiry, this dicta is inconclusive here because that court was not called upon to distinguish between the power to initiate and the power to terminate prosecutions.[10]

The absolute power and discretion of the Attorney General or his subordinates to institute prosecution is conceded, as it must also be conceded that no federal appellate court has come face to face with the asserted power of the district court under 48(a) to grant or withhold leave to dismiss a criminal prosecution once begun. The question is squarely presented here for the first time as a controversy between the Executive and Judicial Branches of government involving opposing asserted powers under the Rule. We now come face to face with the controversy, and it becomes " 'the province and duty of the judicial department to say what the law is.' " See Chief Justice Burger in *Nixon,* supra at 703, 94 S.Ct. at 3105 quoting Chief Justice Marshall in *Marbury v. Madison,* 5 U.S. 137, 136, 1 Cranch. 137, 2 L.Ed. 60 (1803).

In situations like these history has its claims, and we think it is appropriate to review it. Before the adoption of 48(a), more than thirty states had, by statute [11] or judicial decision,[12] modified the common law to give courts a responsible role in the dismissal of a pending criminal

---

**9.** Though the court did not articulate its reasons for this observation, we surmise that it had in mind the constitutional restriction imposed by the Doctrine of Separation of Powers.

**10.** In his special concurrence in *United States v. Cox,* supra, at 183, Chief Judge Brown stressed the difference between the power to initiate and the power to terminate:

"With it [a properly signed indictment] the whole prosecution has been started. And what was previously an unfettered discretionary right on the part of the executive not to initiate prosecution has now been set in motion and can be stopped only on the exec-utive taking affirmative action for dismissal with all the uncertainties which F.R.Crim.P. 48(a) generates."

**11.** See statutes cited in ALI, Code of Criminal Procedure, Commentaries to § 295.

**12.** *Guinther v. City of Milwaukee,* 217 Wis. 334, 258 N.W. 865 (1935); *People ex rel. Hoyne v. Newcomer,* 284 Ill. 315, 120 N.E. 244 (1918); *People ex rel. Kunstman v. Shinsaku Nagano,* 389 Ill. 231, 59 N.E.2d 96 (1945); *Denham v. Robinson,* 72 W.Va. 243, 77 S.E. 970 (1913); *State v. Ward,* 112 W.Va. 552, 165 S.E. 803 (1932); *State v. Charles,* 183 S.C. 188, 190 S.E. 466 and cases cited at 468–470 (1937). See also 103 A.L.R. 1249.

proceeding by requiring an "order" or "leave" or "consent" of court. The state case law interpreting this change is sparse, but what there is of it consistently affirms the power and duty of the court to exercise discretion to grant or withhold leave to dismiss pending criminal prosecutions in "the public interest." [13] The American Law Institute's Model Code of Criminal Procedure, drafted in the decade before the Rule, codified the state statutory law, clearly articulating a judicial discretion of significant scope:

"The court either on the application of the prosecuting attorney or on its own motion may in its discretion for good cause order that a prosecution by indictment or information be dismissed. The order for dismissal shall be entered [of record] on the minutes with the reasons therefor.

"No prosecution by indictment or information shall be dismissed, discontinued or abandoned except as provided in this chapter." § 295 Official Draft with Commentary (June 15, 1930).

Upon the adoption of the Federal Enabling Act, a distinguished committee commissioned by the Supreme Court submitted a number of drafts for the criticism of the bench and bar. See Orfield, Criminal Procedure under the Federal Rules § 48:17, pp. 336–337 (1967). The Advisory Committee submitted a preliminary draft to the Supreme Court including as a predecessor to Rule 48(a) the following: "The Attorney General or the United States Attorney may file a dismissal of the indictment or information with a statement of the reasons therefor and the prosecution shall thereupon terminate." Id. at p. 338. Professor Orfield, a member of the original Advisory

Committee and the author of a treatise on the criminal rules, tells us that in the Supreme Court's response to the Committee's draft, "[t]he court pointed out that the proposed Rule [now 48(a)] gave the Attorney General or the United States Attorney unqualified authority to nolle prosse a case without consent of the court," and inquired "Is this now the law, and should it be the law, any more than that the Government can confess error on appeal in a criminal case without consent of the court? Cit[ing] *Young v. United States,* 315 U.S. 257–259 [62 S.Ct. 510, 86 L.Ed. 832] (1942)." Id.

In the Young case the government confessed error on appeal but the Supreme Court took the case to examine independently the confessed error. In the opinion the court stated, "The public interest that a result be reached which promotes well-ordered society is foremost in every criminal proceeding. The interest is entrusted to our consideration and protection as well as that of the enforcing officers." 315 U.S. at 259, 62 S.Ct. at 511.

In a resubmitted draft, the Committee made no changes in this Rule despite the Reporter's suggestion that the Committee reconsider it "in the light of the suggestion of the Supreme Court and its statement in *Young v. United States,*" and § 295 of the American Law Institute Code of Criminal Procedure and the law of thirty states, requiring the consent of the court. Orfield, Criminal Procedure Under the Federal Rules, § 48:17, p. 339. The Supreme Court deleted the phrase "with a statement of the reasons therefor," and, in lieu thereof, inserted the phrase "by leave of court." Id. at 48:19, p. 343. As thus amended, 48(a) was sub-

---

13. *Guinther v. City of Milwaukee,* 217 Wis. 334, 258 N.W. 865, 867 (1935). See cases cited at note 12, supra. See also *Wallace v. State,* 145 Tex.Cr.R. 625, 170 S.W.2d 762 (1943); *Thor v. Ashe,* 138 Pa.Super. 222, 11 A.2d 173 (1940); *People v. Romero,* 13 Cal. App.3d 667, 57 P.2d 557 (Div. 1, 1936); *Ex parte Rusk,* 128 Tex.Cr.R. 135, 79 S.W.2d 865 (1935); *Jones v. Busby,* 37 Okl.Cr. 68, 256 P. 758 (1927); *Moore v. State,* 170 Ark. 697, 280

S.W. 657 (1926); *Lacey v. State,* 193 Ala. 677, 69 So. 244 (1915) (where the trial court's denial was held non-reviewable). Cf. *Shipp v. State,* 215 Miss. 541, 61 So.2d 329 (1952) (where the court's power to exercise discretion was not questioned, but its abuse of discretion was found when the evidence supporting insanity as a ground for nolle prosequi was overwhelming).

mitted to Congress and adopted. It seems manifest that the Supreme Court intended to make a significant change in the common law rule by vesting in the courts the power and the duty to exercise a discretion for the protection of the public interest. The early case law interpreting the Rule supports this theory.

The first case of record is *United States v. Doe,* 101 F.Supp. 609 (D.Conn. 1951). Like our case, Doe involved a government motion to dismiss an entire prosecution against the defendant. Judge Hincks was of the considered view that the term "by leave of court" in the new Rule contemplates that the court shall exercise a "sound discretion in the premises." [14]

The court considered and sustained a Rule 48(a) motion to dismiss criminal proceedings in *United States v. Greater Blouse, Skirt & Neckwear Con. Ass'n,* 228 F.Supp. 483 (S.D.N.Y.1964). While indulging in the good faith of the prosecution, and giving great weight to its recommendations, Judge Weinfeld was nevertheless of the view that the recommendations were not conclusive upon the court, "otherwise there would be no purpose to Rule 48(a), which requires leave of Court . . ."; that the rule contemplated public exposure of the reasons for the abandonment of an indictment, information or complaint in order to prevent "abuse" of the uncontrolled power of dismissal previously enjoyed by the prosecutors; that to gain the court's favorable discretion, the prosecution must convince the court that the reasons for the proposed dismissal are substantial. Id. at 486. The motion was granted, because the government was without

sufficient evidence to warrant prosecution and the dismissal was not for the purpose of harassing the defendant. Judge Weinfeld was of the further view that "to overcome the force of [the prosecution's] recommendation, it must clearly and convincingly appear that the public interest requires its refusal." Id. See also *United States v. Bettinger,* 54 F.R.D. 40 (D.Mass.1971); *United States v. Becker,* 221 F.Supp. 950 (W.D.Mo. 1962); *United States v. Shanahan,* 168 F.Supp. 225 (S.D.Ind.1958) (where Judge Steckler had no doubt of the trial court's discretion to grant or deny leave to dismiss under 48(a)); *Nesbitt v. United States,* 249 F.2d 17 (6th Cir. 1957) (where the court upheld the dismissal of a prosecution upon motion of the government without the consent of the defendant).

Judge Weinfeld anticipated our case when he postulated what would eventuate should the motion to dismiss be denied. He reasoned that the Attorney General would still have discretion to decline to move the case for trial; in which event, the court would be without power to issue mandamus or other order to compel prosecution since such direction would violate the traditional Separation of Powers Doctrine. The result is that although the court is authorized to deny the motion to dismiss in the public interest, it is nevertheless constitutionally powerless to compel the government to proceed.

This brings us pointedly to an accommodation of the intended scope of the Rule and the sweep of the Constitution. Chief Justice Burger (then Judge of the District of Columbia Circuit) put our problem in proper perspective when he observed:

> but required that there be filed a statement of the reasons for the dismissal. The Supreme Court, however, has revised the rule and adopted it as it now reads, that no statement of reasons is required but the leave of court must first be obtained."

Federal Rules of Criminal Procedure with Notes of the Committee and Proceedings, under the imprimatur of the New York University Law School at 170–171 (1946). See also Moore's Federal Practice 48.02[1]; Wright, Federal Practice and Procedure § 812.

---

**14.** Judge Hincks, later of the Second Circuit, referred to the remarks of another member of the Advisory Committee, Mr. G. Aaron Youngquist, before the institute on Federal Rules of Criminal Procedure at the New York University Law School in a session held in February, 1946, before the effective date of the rules. Mr. Youngquist commented:

> "The rule as submitted to the Supreme Court by the Committee . . . gave the Attorney General or the United States Attorney a right to dismiss without leave of court,

"Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." *Newman v. United States,* supra at 480.

And in *United States v. Nixon,* supra at 704, 94 S.Ct. 3090, 3105, the Chief Justice again emphasized the delicacy of the court's role in this area, quoting Justice Brennan in *Baker v. Carr,* 369 U.S. 186, 211, 82 S.Ct. 691, 706, 7 L.Ed.2d 663 (1962):

"Deciding whether a matter has in any measure been committed by the Constitution to another branch of government, or whether the action of that branch exceeds whatever authority has been committed, is itself a delicate exercise in constitutional interpretation, and is a responsibility of this Court as ultimate interpreter of the Constitution."

Surely, we should approach our task with the humility which characterizes the proper exercise of all power.

■ It seems to us that the history of the Rule belies the notion that its only scope and purpose is the protection of the defendant. The Supreme Court's deliberate insertion of the phrase "by leave of court," the phrase itself denoting judicial choice, must be taken in the context of the Court's contemporaneous *Young* decision and the state modifications of the common law as codified by the American Law Institute. Viewed in this light, we think it manifestly clear that the Supreme Court intended to clothe the federal courts with a discretion broad enough to protect the public interest in the fair administration of criminal justice. It is against this background that we consider the overpowering effect of the Doctrine of Separation of Powers.

In the resolution of this question, we think *United States v. Nixon,* supra, both pertinent and authoritative. In that case the Chief Executive asserted the unqualified privilege of an immunity from judicial process under all circumstances as a derivative of the Doctrine of Separation of Powers. Chief Justice Burger responded:

"The impediment that an absolute, unqualified privilege would place in the way of the primary constitutional duty of the Judicial Branch to do justice in criminal prosecutions would plainly conflict with the function of the courts under Art. III. In designing the structure of our Government and dividing and allocating the sovereign power among three coequal branches, the Framers of the Constitution sought to provide a comprehensive system, but the separate powers were not intended to operate with absolute independence.

" 'While the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autonomy but reciprocity.' *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 635 [72 S.Ct. 863, 870, 96 L.Ed. 1153] (1952) (Jackson, J., concurring)." *United States v. Nixon,* supra at 707, 94 S.Ct. at 3107.

The Chief Justice, speaking for a unanimous court, went on to conclude that the legitimate needs of the judicial process may very well outweigh Executive privilege; and that it is necessary to resolve these competing interests in a manner that preserves the essential function of the Executive Branch by according high respect to its claim of privilege. Ultimately, the Court sustained the power to subpoena Executive material pertaining to the fair administration of criminal justice without affecting the national security.

■ That authoritative reasoning should be our guide here. We think the rule should and can be construed to preserve the essential judicial function of protecting the public interest in the evenhanded administration of criminal justice without encroaching on the pri-

mary duty of the Executive to take care that the laws are faithfully executed. The resulting balance of power is precisely what the Framers intended. As Judge Wisdom put it, quoting Montesquieu, " 'To prevent the abuse of power, it is necessary that by the very disposition of things, power should be a check to power' . . . [thus] the framers wove a web of checks and balances designed to prevent abuse of power" and "were too sophisticated to believe that the three branches of government were absolutely separate, air-tight departments." *United States v. Cox*, supra at 190. From this, it seems altogether proper to say that the phrase "by leave of court" in Rule 48(a) was intended to modify and condition the absolute power of the Executive, consistently with the Framer's concept of Separation of Powers, by erecting a check on the abuse of Executive prerogatives. But this is not to say that the Rule was intended to confer on the Judiciary the power and authority to usurp or interfere with the good faith exercise of the Executive power to take care that the laws are faithfully executed. The rule was not promulgated to shift absolute power from the Executive to the Judicial Branch. Rather, it was intended as a power to check power. The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated. The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless clearly contrary to manifest public interest. In this way, the essential function of each branch is synchronized to achieve a balance that serves both practical and constitutional values.

Judge Hill was undoubtedly clothed with a discretion to determine whether the dismissal of these charges was clearly contrary to the public interest. But it is a judicial discretion subject to appellate review. And since that discretion is constitutionally sensitive, we feel bound to a closer scrutiny than in the ordinary case where such practical considerations as finality of decision, judicial economy, and trial judge's closeness to the evidentiary process dictate greater appellate court deference.[15] If upon appraisal of all the relevant factors, the appellate court has a definite and firm conviction that the trial court committed a clear error of judgment in the conclusion it reached, the judgment must be reversed. See *In re Josephson*, 218 F.2d 174, 182 (1st Cir. 1954) (Magruder, C. J.), quoted in *Noonan v. Cunard Steamship Co.*, 375 F.2d 69, 71 (2d Cir. 1967). Judging this case by these standards in the light of the Rule's history and constitutional context, we are convinced that the trial court exceeded the authority committed to it under the Rule.

Judge Hill was "unable to perceive how the best interest of justice could be served by dismissing serious charges with a potential penalty of thirty-five years imprisonment and a $70,000 fine in exchange for a guilty plea in an unrelated case carrying a maximum penalty of two years and a $10,000 fine." He also referred to the fact that "the investigatory material developed by [Texas] state and federal agencies was turned over to the federal officials with the understanding that the federal government would initiate and pursue appropriate prosecution"; that the government's "bare assertion" of reasons for dismissal was unaccompanied by factual evidence. In these circumstances, he concluded, "the interest of justice would not be served by a dismissal of this case." The brief of the court-appointed prosecutors seems to impugn the good faith of the government by suggesting that the motion to continue the trial, filed jointly by the prosecution and both defendants in June 1974, was calculated to facilitate the surreptitious performance of the plea agreement negotiated one month earlier

---

**15.** See Rosenberg, Judicial Discretion of the Trial Court, Viewed from Above, 22 Syracuse L.Rev. 635 (1971).

between Jacobsen and the Watergate Special Prosecution Force, and thus dispense with the trial of the Texas case.

■ We think this appraisal of the whole matter misapprehends the relative roles of the Executive and the Judiciary under 48(a). The considerations which prompted Judge Hill to overrule the motion to dismiss are, in our judgment, legally insufficient to overcome the presumption of the government's good faith and establish its betrayal of the public interest. We do not think the plea negotiations between the two prosecutorial arms of the government and counsel for both defendants were improper, even though not disclosed to the sentencing judges until consummation. It is not suggested that the facts recited in the joint motion for continuance were untrue, or that they were inadequate grounds for a continuance. In this situation, we can hardly say that the motion was a sham or a deception. It was not incumbent upon the government to inform the sentencing judges of the plea negotiations until after they had been consummated. The result of these negotiations was finally placed before both sentencing courts in the form of plea agreements, which themselves have a legitimate and desirable function in the effective administration of criminal justice. See ABA Standards, Pleas of Guilty §§ 3.1, 3.3.[16] Nor was it clearly contrary to the public interest for the government to accept in these plea agreements a reduction in the maximum possible sentence of Cowan and Jacobsen, when, as stated in the government's

motion, it served to further an investigation by an especially created and wholly autonomous arm of the Executive. We cannot agree with Judge Hill's view that this motion lacked specificity of evidentiary proof. The representations in the motion and the supporting memorandum were not merely conclusory; they specified the investigation being pursued in the District of Columbia and the necessity of obtaining Jacobsen's cooperation under the plea agreement calling for dismissal of the Texas charges. We are convinced that this is legally sufficient to justify leave of court to dismiss the Texas charges against Jacobsen in consideration of his guilty plea in the District of Columbia.

In sum, it was within the province of the two prosecutorial arms of the government to weigh the relative importance of two separate prosecutions in two separate districts and dispose of them as practical considerations seemed to dictate. Nothing in this record overcomes the presumption that they did so in good faith for substantial reasons sufficiently articulated in the motion to dismiss. As to the interest of the State of Texas in these charges, we can perceive no reason why the dismissal would bar or prejudice a state prosecution on substantially the same Texas charges. In the first place, Jacobsen was never put in jeopardy on the Texas charges. Moreover, a prosecution by one sovereign is no bar to a prosecution by another sovereign arising out of the same facts. *Bartkus v. Illinois*, 359 U.S. 121, 136, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Abbate*

---

16. In pertinent part, the Standards read as follows:

"§ 3.1 Propriety of plea discussions and plea agreements.

(a) In cases in which it appears that the interest of the public in the effective administration of criminal justice (as stated in section 1.8) would thereby be served, the prosecuting attorney may engage in plea discussions for the purpose of reaching a plea agreement. . . .

§ 3.3 Responsibilities of the trial judge.

(a) The trial judge should not participate in the plea discussions.

(b) If a tentative plea agreement has been reached which contemplates entry of a plea of guilty or nolo contendere in the expectation that other charges before that court will be dismissed or that sentence concessions will be granted, upon request of the parties the trial judge may permit the disclosure to him of the tentative agreement and the reasons therefor in advance of the time for tender of the plea. . . ."

*v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959).

Having concluded that the trial court exceeded the bounds of its discretion under Rule 48(a) in denying the government's motion to dismiss, we have no cause to consider the propriety of its order effectuating that denial by appointing special prosecutors. The case is reversed and remanded with directions to sustain the motion to dismiss.