### UNITED STATES

v.

**Willis Judge BUTLER, Lester Wallick Fuller, Dayton Bud Evans, Larry Dale Washington.**

### UNITED STATES

v.

**Robert HAMM.**

**Crim. Nos. B–79–1–CR, B–79–10–CR.**

United States District Court,
E. D. Texas,
Beaumont Division.

March 24, 1980.

John H. Hannah, Jr., U. S. Atty., Tyler, Tex., David P. Baugh, Asst. U. S. Atty., Beaumont, Tex., for United States.

Melvyn C. Bruder, Dallas, Tex., for Willis Judge Butler and Dayton Bud Evans.

Wendell Radford, Beaumont, Tex., for Lester Wallick Fuller.

Randolph L. Schaffer, Houston, Tex., for Larry Dale Washington.

Edward D. Foreman, St. Petersburg, Fla., for Robert Hamm.

## MEMORANDUM OPINION

JOE J. FISHER, Chief Judge.

On March 4, 1980, the United States Attorney for the Eastern District of Texas moved to dismiss count 1 of the indictment in B–79–1–CR against Willis Judge Butler, Lester Wallick Fuller, Dayton Bud Evans, and Larry Dale Washington, and count 9 of the indictment in B–79–10–CR against Robert Hamm. This motion was denied by the Court in a written order and bench opinion three days later when defendants Butler, Evans, Washington, and Hamm were before

the Court for sentencing on these counts. Subsequently, each of these defendants moved to withdraw his plea of guilty to the count in the indictment which the United States Attorney sought to dismiss. This motion was also denied. When defendant Fuller was ordered before the court for sentencing on March 10, 1980, for his conviction on count 1 of the indictment in B–79–1–CR, he, too, moved to withdraw his guilty plea. This motion was also denied.

Because, when mixed with the facts in this case, both the motion to dismiss of the United States Attorney and the motions of each defendant to withdraw his earlier plea of guilty raise significant legal questions, some of Constitutional dimension, the Court writes today to expound and clarify its earlier decision.

## I

### *B–79–1–CR*

On November 29, 1978, several persons were arrested by the United States Drug Enforcement Administration as they were in the process of unloading approximately 40,000 pounds of marijuana from the shrimp vessel Agnes Pauline in the vicinity of Port Arthur, Texas. Among those arrested were defendants Willis Judge Butler, Lester Wallick Fuller, Larry Dale Washington, and Dayton Bud Evans.

On January 16, 1979, an indictment was filed with the United States District Court for the Eastern District of Texas charging. these defendants and ten others with various drug-related crimes. In particular, defendants Butler, Fuller, Washington, and Evans were each charged in count 1 with conspiracy to violate 21 U.S.C. § 952 (importing of a Schedule I nonnarcotic controlled substance into the United States) and 21 U.S.C. § 841(a)(1) (distributing or possession of a controlled substance with intent to distribute, see 21 U.S.C. §§ 846, 963 (conspiracy)). Each of these defendants was also charged in separate counts with possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Defendants Butler and Fuller were each charged with importing a Schedule I nonnarcotic controlled substance into the United States in violation of 21 U.S.C. §§ 952, 960(a)(1). Counts alleging violations of 18 U.S.C. § 924(b) (shipping, transporting, or receiving a firearm in foreign commerce with intent to commit an offense punishable by imprisonment for more than one year) and 26 U.S.C. §§ 5861(c), 5871 (possession of an unregistered firearm) were also lodged against defendant Fuller.

At different times following their arrest, each of these defendants through their counsel negotiated plea agreements with an assistant United States Attorney. The terms in each agreement were substantially the same: in exchange for a plea of guilty to conspiracy to possess a controlled substance with intent to distribute, see 21 U.S.C. § 846, and full cooperation with the United States in the prosecution of the case against others, the United States agreed not to prosecute the cooperating defendant for any other drug-related crimes arising out of the seizure of the shrimp vessel Agnes Pauline.[1] A rearrangement was held

1. The plea agreement entered into by the Assistant United States Attorney and defendant Larry Dale Washington and his counsel is similar to the agreements between the Assistant United States Attorney and defendants Butler, Fuller, and Evans.

The agreement provided:
January 10, 1979
Mr. Randolph Schaffer
Schaffer, Lambright & Ramsey
Attorneys at Law
3401 Louisiana, Suite 270
Houston, Texas 77002
Re: Larry Dale Washington
Dear Sir:

This letter will acknowledge our agreement regarding the above referenced client of your firm. In consideration for statements, testimony and a plea of guilty to conspiracy to possess marijuana with intent to distribute, 21 U.S.C. 846, the Government agrees not to prosecute any additional charges arising from the transactions of November 29, 1978 in the Eastern District of Texas or other transactions, divulged during questioning, involving drug transactions.

All parties specifically agree that the statement of the Defendant will include responses to all questions asked by Government agents and any and all information concerning drug

on February 22, 1979, when the existence of the plea agreement was brought to the Court's attention. At that time, each of these defendants was cautioned by the Court that he was under no obligation to plead guilty and that by so doing a trial by jury was waived and the Court was invested with the right to have the defendant sworn and interrogated. Before accepting the pleas of guilty, the Court found that each defendant and his counsel understood the nature of the offense charged, that each defendant's plea of guilty was made freely and voluntarily, and that each defendant was aware of the punishment the Court might assess. After the pleas of guilty were accepted, the Court found defendants Butler, Fuller, Evans, and Washington guilty of conspiracy to possess a controlled substance with intent to distribute and, as provided in the plea agreement, dismissed the remaining counts against these defendants.[2] In accord with his agreement, each of these defendants supplied information by giving statements to the United States.

### B–79–10–CR

Due, in part, to the cooperation of defendants Butler, Fuller, Evans, and Washington, the United States Attorney was able to learn of four other related shipments of marijuana into the United States prior to the seizure of the Agnes Pauline in November 1978. As a result of this cooperation and further investigation by the Drug Enforcement Administration another indictment was returned in this Court on May 1, 1979. This indictment, more encompassing than the first, named additional defendants, among them Robert Hamm and Charles Noel Talkington, and charged violations of 18 U.S.C. § 1962(a), (d) (racketeering); 21 U.S.C. § 841(a)(1) (possession of a controlled substance with intent to distribute); 21 U.S.C. §§ 952, 960(a)(1) (importing a controlled substance into the United States); 21 U.S.C. § 848 (continuing criminal enterprise); and 18 U.S.C. § 1952(a)(3) (facilitation of interstate and foreign travel or transportation in aid of racketeering enterprises). In particular, defendant Robert Hamm was charged in count 1 of the indictment with racketeering, 18 U.S.C. §§ 1962(d), 1963(a)(1), and in counts 9 and 10 of the indictment with possession of a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1).

As the date for trial of Robert Hamm and Charles Noel Talkington in B–79–10–CR grew near, these two defendants also decided to accept plea bargains offered by the Assistant United States Attorney. Similar to the agreement initially reached with defendants Butler, Fuller, Evans, and Washington in B–79–1–CR, defendants Hamm and Talkington each agreed to enter a plea of guilty to one count of the indictment and to cooperate fully with the United States in the investigation and prosecution of the case. The Assistant United States Attorney agreed to dismiss the remaining counts of the indictment against these defendants.[3]

---

transactions or persons involved, whether solicited or unsolicited.

It is specifically understood that the making of any known false statements or the omission of inculpating information shall void this agreement.

It is further agreed that any cooperation received from your client will be noted, in writing, to the United States Probation Department, Eastern District of Texas, prior to the sentencing of your client.

Sincerely,
John H. Hannah, Jr.
United States Attorney
/s/ ——————————
 David P. Baugh
 Assistant United States Attorney

2. Change of Plea Hearings, *United States v. Butler* (defendants Butler, Fuller, Evans, and

Washington), B–79–1–CR (E.D.Tex. Feb. 22, 1979).

3. The plea agreement between the United States Attorney's Office and defendant Hamm and his counsel provided:

> September 7, 1979
> Mr. Edward D. Foreman
> Attorney at Law
> 4154 Central Avenue
> St. Petersburg, Florida 33711
> RE: United States of America vs. Martin Marion Sneed, Sr., et al B–79–10–CR ROBERT R. HAMM
> Dear Sir:
> This letter will acknowledge our agreement regarding the above named client of your firm. In consideration for a full and complete statement from your client, his testimo-

When these agreements were made known to the Court, a rearraignment for a change of plea was held on September 10, 1979, for defendant Hamm. Again, similar to the proceedings conducted by the Court for the rearraignment of defendants Butler, Fuller, Evans, and Washington, defendant Hamm was cautioned by the Court that he was under no obligation to plead guilty and that by so doing he waived a trial by jury. Before accepting the plea of guilty, the Court found that defendant Hamm understood the nature of the offense charged, that his plea of guilty was made freely and voluntarily, and that he was aware of the punishment the Court might assess. After the plea of guilty was accepted, the Court found defendant Hamm guilty and indicated to Hamm and his counsel that it would follow the terms of the plea agreement.[4]

### The Subsequent Agreements

During the summer of 1979, both defendants Butler, Fuller, Evans, and Washington and the United States apparently · had second thoughts about the plea bargains that they had struck earlier. The United States hoped to use the testimony of Butler, Fuller, Evans, and Washington at the trial of the indictment in B–79–10–CR, and, for whatever reason, the Assistant United States Attorney chose to "sweeten" his agreement with these defendants by,

among other things, agreeing to recommend a six-month cap on any imprisonment. The agreement was contained in a letter of June 6, 1979, to counsel for defendants Butler, Fuller, Evans, and Washington. The letter provided:

Dear Sir:

This letter will acknowledge our meeting and agreement of Saturday, June 2, 1979, regarding your client, named above.

In consideration for the continued cooperation of your client and his truthful testimony at trial, the United States agrees to enter into a Rule 11(e) Agreement with your client regarding punishment, subject to the approval of the sentencing Judge, that your client receive no more than five years, with not more than six months imprisonment, to serve. Further, the United States will extend every effort to insure the imprisonment of your client in a suitable minimum security prison where all necessary security for their personal safety may be assured.

Thank you for your usual professional attention to these matters.

> Sincerely,
> JOHN H. HANNAH, JR.
> UNITED STATES ATTORNEY
> /s/ David P. Baugh
> Assistant U. S. Attorney

ny at trial of the defendants of the above styled and referenced cause, and a plea of guilty to possession of marihuana with intent to distribute, Title 21, United States Code, Section 841(a)(1), the government agrees to dismiss the remaining counts of the indictment and to not prosecute your client for criminal offenses related to the government in his statement which arise from or are a result of his drug related activity.

The government further agrees to take no position upon any request by the defense for leniency regarding the punishment limits imposed by 21 U.S.C. § 841(a)(1) and that the United States Attorney's Office will urge imprisonment in a suitable low security facility, if the Court imposes imprisonment.

It is specifically agreed that the statement of your client will include responses to all questions asked by Drug Enforcement Administration agents and any and all informa-

tion concerning drug transactions or persons involved, whether solicited or unsolicited.

It is specifically understood that the making of any known false statements or the knowing omission of material facts shall void this agreement.

> Sincerely,
> JOHN H. HANNAH, JR.
> UNITED STATES ATTORNEY
> /s/ David P. Baugh
> Assistant United States Attorney
> /s/ Robert Hamm
> /s/ Edward D. Foreman
> Counsel for Robert Hamm

A similar agreement was concluded between the United States Attorney's Office and defendant Talkington and his counsel.

**4.** Change of Plea Hearing, *United States v. Sneed* (defendant Hamm), B–79–10–CR (E.D. Tex. Sept. 10, 1979).

After he pleaded guilty on September 10, 1979, the United States Attorney's Office also entered into an agreement with defendant Hamm which provided that the United States Attorney would recommend a maximum sentence of two years incarceration.[5]

Defendants Fuller and Talkington were brought before the Court for sentencing on Friday, February 29, 1980. In chambers prior to the sentencing, the Court understood counsel for defendant Fuller to represent that at the time defendant Fuller pleaded guilty, the underlying plea agreement had contained a provision whereby the United States Attorney's Office would recommend a sentence which would include no more than six months incarceration. See Fed.R.Crim.P. 11(e)(1)(B). The Court was misled into believing that the subsequent "sweetened" agreement, dated June 6, 1979, supported defendant Fuller's plea of guilty on February 22, 1979, when, in fact, it was not part of the plea bargain.[6]

Defendant Talkington was sentenced to a period of three years. There was no agreement between defendant Talkington and his counsel and the Assistant United States

---

**5.** Although the Assistant United States Attorney argued to the Court on March 7, 1980 that the letter of June 6, 1979 reflected the Court's approval of an agreement between the United States Attorney's Office and defendants Butler, Evans, Fuller, and Washington to "a specific sentence [as] the appropriate disposition of the case," see Fed.R.Crim.P. 11(e)(1)(C), the text of the letter ("subject to the approval of the sentencing Judge") requires the Court to conclude that it was merely an agreement under which the United States Attorney's Office would recommend a six-month sentence to the Court at the time of sentencing, see Fed.R.Crim.P. 11(e)(1)(B). The Court further concludes that the agreement with defendant Hamm also was for a recommendation. This conclusion is buttressed by subsequent statements of the Assistant United States Attorney and several of the defendants. During a pretrial hearing in *United States v. Sneed*, B–79–10–CR, defendant Butler indicated that "[t]hey said they would recommend a six-month confinement with a four and a half-year probation." Pre-trial Hearing, *United States v. Sneed*, B–79–10–CR, p. 284 (E.D.Tex.). Later, during the marijuana-smuggling trial, both the Assistant United States Attorney and defendants Butler and Hamm indicated that the "sweetened" agreements merely required a recommendation of a sentence and that each defendant who had entered a plea of guilty and had been convicted could still be assessed the maximum punishment by the Court. Defendant Hamm knew that he could still be assessed the five-year maximum:

> MR. BAUGH (Assistant United States Attorney): In return for your plea of guilty and your testimony, what is the Government supposed to do for you, what are you expecting the Government to do for you?
> MR. HAMM: A five year cap on the charges that I plead guilty to and—
> MR. BAUGH: A five year cap you mean you plead guilty to a five year sentence and—

MR. HAMM: Yes, sir, that's what—I'm not familiar with the terminology.

Trial Transcript, *United States v. Sneed*, B–79–10–CR, vol. 5, p. 1387 (E.D.Tex. Sept. 17, 1979). Later the Assistant United States Attorney clearly indicated that the letter of June 6, 1979 contained a recommendation.

> MR. BAUGH: Do you remember the word recommendation being used?
> MR. BUTLER: Yes sir.
> MR. BAUGH: Do you understand the difference between a recommendation and a sure shot?
> MR. BUTLER: Yes sir.
> MR. BAUGH: And then later after that did you have another deal?
> MR. BUTLER: That was when this five year sentence you talked about?
> MR. BAUGH: Well, did we have another deal?
> MR. BUTLER: Yes, when I was offered a five year sentence with six months to do time.
> MR. BAUGH: What were you supposed to do in return for that recommendation?

Trial Transcript, *United States v. Sneed*, B–79–10–CR, vol. 6, pp. 1733–34 (E.D.Tex. Sept. 18, 1979).

> MR. OTERI: During the course of your discussion with your lawyer about what kind of deal you were going to make with the Government, you became aware, did you not, that the Government can help you get a light sentence?
> MR. BUTLER: Yes, sir, that they would recommend it, yes, sir.

Trial Transcript, *United States v. Sneed*, B–79–10–CR, vol. 7, p. 1884 (Sept. 18, 1979). Similar testimony was later elicited from defendants Butler, Hamm, and Washington by Assistant United States Attorney Baugh in a related marijuana-smuggling trial. *United States v. Ruppel*, B–79–20–CR (E.D.Tex. Feb. 12–17, 1980).

**6.** Sentencings, *United States v. Butler* (defendant Fuller), B–79–1–CR, pp. 26–28 (E.D.Tex. Feb. 29, 1980).

Attorney to recommend a specific sentence. The court refused to indicate to counsel for defendant Fuller whether it considered itself bound by the recommendation of a six-month sentence supposedly contained in the initial plea agreement between the Assistant United States Attorney and defendant Fuller and his counsel as the agreement was unknown and not disclosed to the Court on February 22, 1979, the time of the guilty plea and conviction. Defendant Fuller then moved through counsel to withdraw his plea. The Court, at the time acting under the mistaken impression that the plea agreement entered into between the Office of the United States Attorney and defendant Fuller and his counsel had contained a provision requiring the United States Attorney's Office to make a recommendation of a six-month sentence, granted the motion out of a sense of fairness to the defendant.

Although there had been some limited testimony during cross-examination at trial of one or two of the Government's witnesses in B–79–10–CR about the existence of a subsequent agreement between the United States Attorney's Office and one or two of the defendants who pleaded guilty,[7] up until the sentencing of Fuller and Talkington, the Court was unaware of any agreement to limit a maximum sentence to six months. After the sentencing of Talkington and calling Fuller for sentencing on February 29, 1980, the Assistant United States Attorney revealed to the Court for the first time that defendants Butler, Fuller, Evans, and Washington had each entered into subsequent agreements with the United States

Attorney on June 6, 1979, which limited the sentence the Court could impose to six months confinement "subject to the approval of the sentencing Judge." At the same time, it was also revealed to the Court that the United States Attorney had agreed after the entry of the plea of guilty to amend the plea bargain agreement with defendant Hamm to provide for a maximum two years incarceration.

### Motion to Dismiss

On Tuesday, March 4, 1980, three days prior to the scheduled sentencing of defendants Butler, Evans, and Washington in B–79–1–CR and defendant Hamm in B–79–10–CR, the United States Attorney moved under Rule 48(a) of the Federal Rules of Criminal Procedure to dismiss the remaining count in the indictments against each defendant who had not already been sentenced. In support of the motion to dismiss the remaining counts against defendants Butler, Fuller, Evans, and Washington, the Assistant United States Attorney argued that each of these defendants had given statements to him to assist in the successful prosecution of others, that it was in the public interest to encourage persons with knowledge to cooperate with the United States, and that "the Court had indicated its refusal to follow the [sentencing] recommendation of the United States Attorney's Office." In support of the motion to dismiss the remaining count in the indictment against defendant Hamm, the United States Attorney argued that the agreement

---

**7.** It should be noted that when it was suggested at trial that certain defendants had agreed to prison terms not to exceed six months, the Court was emphatic that it neither agreed to a specific sentence for any defendant nor was obligated to follow the recommendation of the Assistant United States Attorney.

THE COURT: I think we're going to have to stop Counsel there. The Court doesn't know anything about a maximum of six months. The Court has never made any agreement to any Defendant who has entered a plea of guilty as to what they would get.

MR. RITCHIE: Yes, sir, I am not representing the Court made that, Your Honor.

THE COURT: Neither does the Court is obligated [sic] to follow any recommendation

made by any Counsel for either the Government or the Defendants . . .

MR. RITCHIE: I will rephrase the question, Your Honor.

THE COURT: All right.

MR. RITCHIE: You understood that [one of the defendants] could withdraw his plea of guilty if he got anymore than six months, did you understand that?

THE COURT: Now, the Court doesn't understand that.

Trial Transcript, *United States v. Sneed*, B–79–10–CR, vol. 5, pp. 1426–27 (E.D.Tex. Sept. 17, 1979).

to reduce defendant Hamm's punishment to a maximum of two years was made after threats on his life, that his testimony was instrumental in obtaining other convictions, that it was in the public interest to encourage persons with knowledge of criminal activity to cooperate with the United States Attorney, and that the Court indicated at the scheduled sentencing of defendant Fuller "a reluctance to honor and abide by the recommendation of the Assistant U. S. Attorney."

## II

■ Rule 48(a) of the Federal Rules of Criminal Procedure provides that "[t]he United States Attorney may by leave of court file a dismissal of an indictment . . and the prosecution shall thereupon terminate." Fed.R.Crim.P. 48(a). Inasmuch as Rule 48(a) distributes the power to terminate a prosecution between the court and the United States Attorney, the precise issue is whether "leave of court" properly may be denied under the attendant facts and circumstances of this case.

The leading case to discuss the power of the Court to withhold leave to terminate a prosecution under Fed.R.Crim.P. 48(a) is *United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975), *cert. denied sub nom., Woodruff v. United States*, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976). In *Cowan*, a United States district judge in Texas had denied the motion of the United States Attorney to dismiss a pending criminal indictment. The defendant, who had not yet been brought to trial, had, in the interim between the filing of the Texas indictment and the scheduled date for trial, pleaded guilty pursuant to a plea bargain to several counts in a later federal indictment filed in the District of Columbia. Under the bargain, the United States Attorney agreed to dismiss the pending Texas prosecution. When the motion for leave to dismiss the indictment was denied, an appeal was taken.

Presented squarely to the Fifth Circuit was the breadth of discretion granted the district court under the "leave of court" provision in Rule 48(a) when the United States attorney sought to terminate a prosecution. Speaking for the court, Judge Alfred Murrah found that by inserting the phrase "leave of court" in Rule 48(a), "the Supreme Court intended to clothe the federal courts with a discretion broad enough to protect the public interest in the fair administration of criminal justice." 524 F.2d at 512.

■ Recognizing that a loose interpretation of Rule 48(a) would create a Constitutional tug-o-war between the executive and the judicial branch of government whenever a United States attorney sought leave to discontinue a prosecution, Judge Murrah held that the

"rule should . . . be construed to preserve essential judicial function of protecting the public interest in the even-handed administration of criminal justice without encroaching on the primary duty of the Executive to take care that the laws are faithfully executed."

*Id. at 512–13.* He went on to indicate that "it seems altogether proper to say that the phrase 'by leave of court' in Rule 48(a) was intended to modify and condition the absolute power of the Executive, consistently with the Framer's concept of Separation of Powers, by erecting a check on the abuse of Executive prerogatives. But this is not to say that the Rule was intended to confer on the Judiciary the power and authority to usurp or interfere with the good faith exercise of the Executive power to take care that the laws are faithfully executed. The rule was not promulgated to shift absolute power from the Executive to the Judicial Branch. Rather, it was intended as a power to check power. The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated. The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless clearly contrary to manifest public interest. In this way, the

essential function of each branch is synchronized to achieve a balance that serves both practical and constitutional values." *Id. at 513.* See also *Rinaldi v. United States*, 434 U.S. 22, 29–30, 98 S.Ct. 81, 85–86, 54 L.Ed.2d 207 (1977); *United States v. Ammidown*, 162 U.S.App.D.C. 28, 35, 497 F.2d 615, 622 (D.C.Cir.1973); *United States v. N. V. Nederlandsche Combinatie Voor Chemische Industrie*, 75 F.R.D. 473, 474 (S.D.N.Y.1977).

### A.

■ The Court is of the opinion that a dismissal of the indictment against these defendants is "clearly contrary to manifest public interest." See *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975), *cert. denied sub nom., Woodruff v. United States*, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976). These defendants were each named in one of the two indictments and the Assistant United States Attorney actively prosecuted each of them up until each agreed to enter a plea of guilty. If the public interest did not support the prosecution of any of these defendants, the Assistant United States Attorney had over a year to move for the dismissal of the indictment in B–79–1–CR against defendants Butler, Fuller, Evans, and Washington and over ten months to move for the dismissal of the indictment in B–79–10–CR against defendant Hamm. Surely, the Assistant United States Attorney must have been aware that when each of these defendants pleaded guilty to a count of the indictment pursuant to the plea bargain agreement which was entered into, the Court might find each defendant guilty and assess a fair sentence. Indeed, the Court can only conclude that the actions of the Assistant United States Attorney are contrary to the public interest. If the public interest would have been served by the dismissal of the indictment against these defendants, the United States Attorney's Office would have moved for dismissal long ago.

### B

■ When the United States Attorney moves to dismiss a criminal proceeding under Rule 48(a), it must present to the court "factual information supporting the recommendation." 3 C. Wright, *Federal Practice and Procedure* § 812 (1969); see also *United States v. Ammidown*, 162 U.S.App.D.C. 28, 33, 497 F.2d 615, 620 (D.C.Cir.1973). A court may not base its decision granting the motion to dismiss on a "conclusory statement by the prosecutor that dismissal is in the public interest." *United States v. Ammidown*, 162 U.S.App.D.C. 28, 33, 497 F.2d 615, 620 (D.C.Cir.1973). In this proceeding, the motions and memorandum presented to the Court by the United States Attorney on the eve of sentencing do nothing more than inform the Court of the *past* cooperation of defendants Butler, Fuller, Evans, Washington, and Hamm and conclude that the public interest would be served by dismissing the indictment. This conclusion lacks the factual basis satisfactory to demonstrate to the Court that the requirements of Rule 48(a) have been met by the United States Attorney.

### C

■ The Court, of course, recognizes that the United States attorney is the "best judge of whether a *pending* prosecution should be terminated." *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975), *cert. denied sub nom., Woodruff v. United States*, 415 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976). (emphasis added). Here, however, unlike the situation in *Cowan* where the court needed to appoint a special prosecutor to try the indictment, the Court has already found the defendants guilty of the crime charged in the indictment and the prosecutional function is only minimally involved in the process of criminal justice. Accordingly, when only sentencing of the defendants remains, it is appropriate for the Court to pay less deference to the decision of the United States Attorney than it normally would. *Cf. United States v. Bean*, 564 F.2d 700, 704 (5th Cir. 1977). Indeed, the action of the United States Attorney to dismiss the indictment cannot be construed as in the public interest as it is nothing more than a camouflaged

attempt to limit the "sentencing authority reserved to the judge." *United States v. Ammidown*, 162 U.S.App.D.C. 28, 35, 497 F.2d 615, 622, (D.C.Cir.1973); *cf. United States v. Bean*, 564 F.2d 700, 704 (5th Cir. 1977). This cannot be allowed, without weakening the authority and integrity of the Court.

### III

Having determined that the motion to dismiss of the United States Attorney should be denied, there remains for consideration the effect of the "sweetened" agreements entered into by the United States Attorney and each of the several defendants subsequent to the entry of guilty pleas and conviction by the Court.

### A

 Assuming *arguendo* that the "sweetened" agreements entered into by the United States Attorney's Office and defendants Fuller, Butler, Evans, Washington, and Hamm provide for "a specific sentence as the appropriate disposition of [a] case," as undoubtably they do not, see note 5 and accompanying text, they could not bind the Court in assessing a sentence as they were entered into subsequent to entry of guilty pleas and convictions. The Federal Rules of Criminal Procedure provide a scheme whereby a plea agreement entered into by the United States Attorney and a defendant can bind the Court in assessing a sentence. Fed.R.Crim.P. 11(e)(1)–(3). If the Court rejects the sentence which was agreed upon the defendant may withdraw the plea of guilty. *Id.* 11(e)(4); C. Wright *Federal Practice and Procedure* § 172 (1979 Supp.). Here the agreements allegedly providing for specific periods of incarceration were entered into several months subsequent to the acceptance of guilty pleas and convictions. The subsequent agreements do not comply with the procedures in Rule 11(e), and they can be of no force or effect.

### B

 Again, assuming *arguendo* that the "sweetened" agreements provide for a specific sentence to be assessed by the Court, the defendants still do not have a right to withdraw their pleas of guilty as the subsequent agreements do not conform to the procedures outlined in Rule 11(e) of the Federal Rules of Criminal Procedure. The provision in Rule 11(e)(4) affording a defendant the opportunity to withdraw his plea is triggered only when the Court rejects a valid plea agreement, *United States v. Gaertner*, 593 F.2d 775 (7th Cir. 1979). In this proceeding, the Court already indicated its intention to follow a valid plea agreement when each of the defendants was rearraigned for a change of plea. At that time, the Court either dismissed the remaining counts of the indictment in open court (defendants Fuller, Butler, Evans, and Washington)[8] or indicated that it would follow the plea agreement (defendant Hamm).[9] As a subsequent agreement between the United States Attorney and a defendant already found guilty is not a valid Rule 11(e) plea agreement, there can be no right to withdraw a guilty plea.

 Assuming, however, the validity of the subsequent plea agreements, it is apparent that the agreements are only requirements to recommend a specific sentence, see note 5 and accompanying text, and it is abundantly clear that refusal of the Court to follow the recommendation of the United States Attorney in a valid plea bargain agreement does not allow a defendant found guilty the right to withdraw his plea of guilty. *United States v. Gaertner*, 593 F.2d 775 (7th Cir. 1979); *United States v. Henderson*, 565 F.2d 1119 (9th Cir. 1977), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978); *United States v. Savage*, 561 F.2d 554 (4th Cir. 1977). Indeed, even if the motions of the defendants to

---

**8.** Change of Plea Hearing, *United States v. Butler* (defendants Butler, Fuller, Evans, and Washington), B–79–1–CR, pp. 18–20 (E.D.Tex. Feb. 22, 1979).

**9.** Change of Plea Hearing, *United States v. Sneed* (defendant Hamm), B–79–10–CR, p. 17 (E.D.Tex. Sept. 10, 1979).

withdraw their pleas of guilty are directed to the discretion of the Court, it is appropriate to deny them.

 Accordingly, the Court concludes that none of these defendants had either a right to bind the Court in fixing a sentence or a right to withdraw a prior plea of guilty. The subsequent "sweetened" agreements neither comply with Rule 11(e) of the Federal Rules of Criminal Procedure nor contain anything more than an agreement by the United States Attorney's Office to recommend a sentence.

## IV

There remains for consideration the decision of the Court to amend its order made in open court on February 29, 1980 allowing defendant Fuller to withdraw his plea of guilty. As is abundantly clear from what has been written so far, defendant Fuller had no right to withdraw his plea at that time. Nevertheless, acting under the mistaken impression that defendant Fuller and the Assistant United States Attorney had entered into an agreement undisclosed to the Court at the time of the plea and the conviction providing for a recommendation of a sentence of six months, the Court granted the motion. See Fed.R.Crim.P. 11(e)(2).

It is within the inherent power of this Court to revoke or amend its interlocutory orders "as justice requires." *Cf.* Fed.R.Civ.P. 60, Advisory Notes, 5 F.R.D. at 479 (civil). In this instance, the Court was under the mistaken impression from counsel for the defendant that a plea agreement existed on February 22, 1979, the time the defendant entered his plea of guilty, that required a recommendation by the United States Attorney's Office of a maximum six months incarceration. Because this inaccurate representation was made by counsel for the defendant, there can be no claim of unfairness or injustice to the defendant

when the Court acts to correct this mistake. Indeed, as this defendant already has pleaded guilty pursuant to a valid plea bargain which the Court has followed by dismissing additional counts in the indictment against him, the Court believes that its discretion in this matter should be used to hold the defendant to his original plea.[10]

---

10. It so happened that the Court assessed the sentence recommended by the United States Attorney's Office in the subsequent "sweetened" agreements when it sentenced defendant Fuller to a period of imprisonment of six months and when it sentenced defendant Hamm to a period of imprisonment of two years, as the Court considered these to be fair sentences under the facts and circumstances of each particular defendant.