IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 6, 2006 Session

## STATE OF TENNESSEE v. MELISSA ANN LAYMAN

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Anderson County**
**No. A3CR0257      James B. Scott, Jr., Judge**

---

**No. E2004-01471-SC-R11-CD - Filed on January 29, 2007**

---

AND

## STATE OF TENNESSEE v. JONATHAN RAY TAYLOR

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Anderson County**
**No. A3CR0014      James B. Scott, Jr., Judge**

---

**No. E2004-02866-SC-R11-CD - Filed on January 29, 2007**

---

GARY R. WADE, J., concurring and dissenting.

Although I concur in part, I must respectfully dissent. In my view, the trial court did not abuse its discretion by denying the Rule 48(a) motion in either case. Accordingly, I would affirm the judgments of the Court of Criminal Appeals.

While prosecutorial discretion is indeed a vital component of the criminal justice system, the district attorney general is entitled to unfettered protection from interference by either the legislative or judicial branches of government only until an indictment or presentment. Thereafter, as observed by the New Jersey Supreme Court in State v. Leonardis, the goal of our system of government is a "cooperative action among the three branches . . . [in order] to guarantee a system of checks and

1

balances." 375 A.2d 607, 612 (N.J. 1977). Our Supreme Court has expressly approved of the concept of blending the governmental powers for the overall good. See, e.g., Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 635 (1952) (Jackson, J., concurring).

At common law, the district attorney general had the absolute and exclusive authority to dismiss a criminal case. As noted by the majority, the common law has been changed by rule in both the state and federal systems. Rule 48(a) of the Tennessee Rules of Criminal Procedure now governs when the district attorney general seeks a dismissal or nolle prosequi of pending criminal charges:

> The state may by leave of the court file a dismissal of an indictment, presentment, informational complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.

Id. (emphasis added). The Tennessee Rule was patterned after the Federal Rule, which was designed to check the unbridled discretion of the prosecution after a formal charge. In Rinaldi v. United States, 434 U.S. 22 (1977), the Supreme Court made the following observation:

> The words "leave of court" were inserted in Rule 48 (a) without explanation. While they obviously vest some discretion in the court, the circumstances in which that discretion may properly be exercised have not been delineated by this Court. The principal object of the "leave of court" requirement is apparently to protect a defendant against prosecutorial harassment . . . when the Government moves to dismiss an indictment over the defendant's objection. But the Rule has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest.

Id. at 29 n.15 (citations omitted) (emphasis added).

In the federal courts, United States v. Cowan, 524 F.2d 504 (5th Cir. 1975), is recognized as the seminal authority as to whether the dismissal of a criminal charge is "clearly contrary to the public interest." The court examined the history of Federal Rule 48(a) and concluded that by adopting the rule, "the Supreme Court intended to clothe the federal courts with a discretion broad enough to protect the public interest in the fair administration of criminal justice." Id. at 512. The court observed that "the rule should and can be construed to preserve the essential judicial function of protecting the public interest and that even handed administration of criminal justice without encroaching on the primary duty of the Executive to take care that the laws are faithfully executed." Id. at 512-513. The central holding in Cowan is as follows:

> The rule was not promulgated to shift absolute power from the Executive to the Judicial Branch. Rather, it was intended as a power to check power. The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be

2

terminated.  The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed <u>unless clearly contrary to manifest public interest</u>.  In this way, <u>the essential function of each branch is synchronized to achieve a balance</u> that serves both practical and constitutional values.

<u>Id.</u> at 513 (emphasis added).

In each of the cases under review, the Court of Criminal Appeals applied an abuse of discretion standard of review and concluded that the trial court had clearly demonstrated on the record its reasons for the denial of the State's motions to dismiss.  <u>Cf.</u> <u>Harris</u>, 33 S.W.3d at 771 (applying an abuse of discretion standard and ruling that the trial court must place on the record the reasons for denying the prosecution motion).  The majority of this Court, however, has applied the same standard of review to reach the opposite conclusion.  In my view, proper deference has not been afforded to the trial court and the record does not support the majority's holding that the trial court abused its discretion by simply substituting its view for that of the prosecutor.  In consequence, I would affirm both the trial court and the Court of Criminal Appeals in each instance.

In <u>Layman</u>, the defendant and the victim, Ginger Powers, were involved in an intimate relationship.  Powers lived at the defendant's residence.  During an argument that devolved into a physical altercation between the two women, the defendant and the victim fell to the floor and the defendant "grabbed over at a lamp cord and put that cord around the deceased['s] neck. . . . [A]fter this fight, the deceased was motionless and was dead."  According to the statement the defendant made to the police, she became fearful, fled the house, and told no one of the incident.  Later, she returned to the residence and dragged the body from the bedroom to a hallway, apparently hoping the victim would be more quickly discovered in that location.  Ultimately, the defendant confided in her mother, who contacted the police.  The victim's body was discovered three days after the initial argument.  The defendant claimed to the authorities that the victim was the aggressor and that she had acted in self-defense.

The forensic pathologist determined that asphyxia was the cause of death due to "blunt trauma injury to nasal area with fractures of [the] nasal spine" which caused "hemorrhage and aspiration."  Because of the advanced degree of decomposition of the body, the pathologist was unable to make any findings regarding any possible injury to the neck.  The prosecutor noted that the pathologist confirmed that the cause of death was essentially a broken nose.  He did, however, acknowledge that his findings were not inconsistent with the defendant's statement that a cord "had gone around the neck" of the victim during the altercation.

The initial charges in <u>Layman</u> were voluntary manslaughter and reckless homicide.  After the indictment, however, the prosecutor concluded that there was "no indication of intent to kill."  The trial court disagreed with that assessment and refused to approve a plea agreement whereby the district attorney proposed to dismiss the charge of voluntary manslaughter and allow pretrial diversion for the reckless homicide charge under Tennessee Code Annotated section 40-15-105(a)(1)(B)(iii)(j) (2003).  The trial court granted a motion for an interlocutory appeal.

In Taylor, the defendant shot and killed his wife, Patricia Lynn Taylor. The defendant, who had a history of depression and was a legal user of methadone, became angry that his wife had been gone "all day" and drew a gun claiming suicidal thoughts. When his wife arrived, the two argued and the gun discharged while the defendant was "waving it around." The bullet struck the victim in the upper arm and, according to the prosecutor, apparently ricocheted, causing her death. The defendant was then indicted for second degree murder and reckless homicide.

The State and the defendant initially proposed a plea agreement whereby the second degree murder charge would be dismissed and the defendant would plead guilty to reckless homicide in exchange for a two-year sentence. The trial court rejected the plea agreement on the basis that "a life has been taken, and there is violence." After the defendant then unsuccessfully sought the recusal of the trial judge, the state filed a notice that it intended to dismiss the second degree murder charge "based on an absence of proof beyond a reasonable doubt." At the hearing on the motion, the prosecutor explained that the State did not believe that it could establish the requisite mental state for a second degree murder conviction. The prosecutor took the position that the defendant "did not intentionally point the gun at the upper arm of the victim in order to kill her." The trial judge, while acknowledging the "almost absolute" authority of the district attorney to dismiss a charge, refused to do so, explaining that "it is clear and convincing when somebody comes here and they point a gun at someone and that gun goes off. . . . That is a danger to society and should not be tolerated. That is the reason for it." At a subsequent hearing, the trial court noted that it would not grant the State's motion because to do so would permit the State to accomplish the earlier plea agreement, which the trial court had specifically rejected, by an indirect means.

When the trial court denied an interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure, the Court of Criminal Appeals allowed an appeal under Rule 10. In the appeal, both the State and the defense asserted that the trial court had exceeded its discretionary authority.

In each case, the Court of Criminal Appeals concluded that the trial court had demonstrated on the record that the dismissal of the charges was contrary to the manifest public interest. I would agree with the assessment by the Court of Criminal Appeals in both cases. The prosecutor has the responsibility to faithfully enforce the laws of this state as a means of maintaining the confidence of the general public. While the discretionary power of the executive branch is unfettered prior to an indictment or presentment, the trial court may thereafter intervene in appropriate circumstances. The discretionary authority shifts to the judicial branch. This "blending of authority" at that stage of the prosecution is an important component of the criminal justice system.

There are aggravating circumstances in each of the two cases. As indicated, the defendant Layman admitted that a cord had "gone around" the victim's neck during a physical altercation. Even though the victim lay still and helpless by the end of the fray, the defendant fled the residence without contacting the authorities and told no one of the incident for at least three days. When she returned to the residence, she moved the body but chose not to contact the police. It was only after the defendant confided in her family that the authorities were called to the scene. "Voluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by

4

adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a) (2003). A criminal offense may be established exclusively by circumstantial evidence. See Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958). The circumstances in the record, although understandably incomplete, support the charge in the original indictment. In my view, the trial court complied with the mandate in Harris, articulating acceptable reasons for refusing to dismiss on the record.

The defendant Taylor, upset at his wife's failure to return home in a timely manner, armed himself and while initially threatening to take his own life, waved the gun in his wife's direction. The gun discharged, causing fatal injuries to Taylor's wife. Again, the trial judge carefully placed in the record his reasons for refusing to dismiss the greater charge of second degree murder, thereby meeting the requirements of Harris. The crime of second degree murder, defined as a knowing killing, may, of course, be established by circumstantial evidence. See State v. Collins, 986 S.W.2d 13, 18 (Tenn. Crim. App. 1998). Again, the circumstances in the record support the charge in the original indictment.

As to the secondary issue, article I, section 35 of the Tennessee Constitution provides that the victims of crimes have "[t]he right to be heard, when relevant, at all critical stages of the criminal justice process as defined by the General Assembly." Tenn. Const. art. I, § 35. Our legislature has defined "critical stages of the criminal justice process" as bond hearings, sentencing hearings, hearings regarding the payment of restitution, and parole hearings. Tenn. Code Ann. § 40-38-302(c)(2) (2003). Notably absent from this definition is a hearing on a plea agreement requiring approval by the trial court. In my view, a motion by the State to dismiss charges would also qualify as a critical stage in the ordinary sense of the term. The Court of Criminal Appeals observed that "the right of the victim's family is paramount" at such pretrial hearings. Our legislature surely did not intend to deny victims the right to be heard at a proceeding where the disposition of the case is at stake.

Indeed, the very purpose of the Victims' Rights Amendment is "[t]o preserve and protect the rights of victims of crime to justice and due process." Tenn. Const. art. I, § 35. The plain language of the statute, however, does not include pretrial hearings on plea agreements or motions to dismiss. See Tenn. Code Ann. § 40-38-302(c)(2) (2003). For this reason, I acquiesce in the conclusion reached by the majority that the victim's family had no constitutional or statutory right to be heard. Our General Assembly should consider amending Tennessee Code Annotated section 40-38-302(c)(2) to include any hearing which proposes a final disposition of the case. See In re C.K.G., 173 S.W.3d 714, 730 n.9 (Tenn. 2005) ("[C]oncerning a variety of issues, this Court has invited legislative action or has reserved lawmaking as more appropriate for the legislature.").

In summary, in each of the two cases, the defendant caused the death of another. The victims had no voice except through the prosecution. I would have concluded that the trial court did not abuse its discretionary authority. Although I concur with the majority's analysis of the "critical stages" issue, it may be imperative for the trial court, when confronted with a motion to dismiss, to hear some evidence as a means of exercising its discretionary authority.

_____

GARY R. WADE, JUSTICE