# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### September 6, 2006 Session

## STATE OF TENNESSEE v. MELISSA ANN LAYMAN

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Anderson County**
**No. A3CR0257     James B. Scott, Jr., Judge**

**No. E2004-01471-SC-R11-CD - Filed on January 29, 2007**

AND

## STATE OF TENNESSEE v. JONATHAN RAY TAYLOR

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Anderson County**
**No. A3CR0014     James B. Scott, Jr., Judge**

**No. E2004-02866-SC-R11-CD - Filed on January 29, 2007**

We granted and consolidated the applications for permission to appeal filed on behalf of Melissa Ann Layman and Jonathan Ray Taylor to determine the scope of a trial court's discretion to deny a motion to nolle prosequi to which the defendant has consented. Layman's appeal also presents the issue of whether a victim's family has a right to be heard at a pretrial hearing concerning a plea agreement or a nolle prosequi. We conclude that when an uncontested motion to nolle prosequi or dismiss a criminal charge is independent of a plea agreement, a trial court's discretion to deny the motion under Rule 48(a) of the Tennessee Rules of Criminal Procedure is limited to extraordinary circumstances indicating betrayal of the public interest. Because in each case the prosecutor's independent, uncontested motion to nolle prosequi the greater charge of the indictment was neither filed in bad faith nor motivated by considerations clearly contrary to manifest public interest, we hold that the trial court abused its discretion in rejecting the nolle prosequi. We also hold in Layman's case that the victim's family did not have the right to be heard at the pretrial hearings concerning the plea agreement and nolle prosequi because such pretrial hearings are not critical stages of the

criminal justice process as defined by Tennessee Code Annotated section 40-38-302(2). Any error in considering the statements of the family, however, was harmless. Accordingly, we reverse the judgments of the trial court and the Court of Criminal Appeals in each case and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgments of the Court of Criminal Appeals Reversed; Cases Remanded**

JANICE M. HOLDER, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and CORNELIA A. CLARK, J., and E. RILEY ANDERSON, SP. J., joined. GARY R. WADE, J., concurring and dissenting.

M. Sue White, Seymour, Tennessee, for the appellant, Melissa Ann Layman.

Kevin C. Angel, Clinton, Tennessee, for the appellant, Jonathan Ray Taylor.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; John H. Bledsoe, Assistant Attorney General; James N. Ramsey, District Attorney General; and Jan Hicks, Assistant District Attorney General for the appellee, State of Tennessee.

**OPINION**

**I. Factual and Procedural Background**

A. <u>State v. Layman</u>

Melissa Ann Layman[1] ("Layman") and Ginger R. Powers ("Powers") began a romantic relationship in 1999 and lived together intermittently over the next several years. Unfortunately, their relationship was marked by several incidents of domestic violence. On July 7, 2003, Layman and Powers had a physical altercation that resulted in Powers' death. According to Layman, Powers was jealous of Layman's ex-husband and began an argument. Layman contends that she attempted to retreat from the argument but Powers pursued her and made repeated threats to kill her. Powers then began to hit Layman in the face and head. Layman relates the remainder of the struggle as follows:

> I told her that I was going to call the police and she went into a rage saying she was not going to jail again. Then she said she was going to get a knife and kill me. She continued to hit me and pull my hair. I started struggling with her and we fell off the bed still fighting. . . . She kept hitting my head against the floor . . . . As we rolled around the floor fighting my hand touched a cord that was laying on the floor. I

---

[1] The defendant spells her surname "Laymon." We adopt the spelling "Layman" as used in the indictment and in accordance with the policy adopted by the Court of Criminal Appeals.

grabbed the cord and it went around her neck. We continued to struggle and then she was just still.

Layman then left the house and did not tell anyone what had happened. On July 9, 2003, two days after Powers' death, Layman returned to her home and moved Powers' body to a different room.[2] The next day, Layman told her family what had happened, and they contacted the police. An autopsy revealed that Powers died of asphyxiation resulting from "blunt traumatic injury to the nasal bone." There was no evidence of strangulation. The prosecutor later informed the doctor performing the autopsy that a cord had been placed around Powers' neck. The doctor informed the prosecutor that strangulation was not inconsistent with his findings because of the state of decomposition of the body.

On August 5, 2003, a grand jury indicted Layman for voluntary manslaughter and reckless homicide. Layman and the State reached a plea agreement in which it was agreed that Layman would plead guilty to reckless homicide and that proceedings against her would be diverted pursuant to Tennessee Code Annotated section 40-15-105 (2006).[3] Under the plea agreement, the State agreed to nolle prosequi[4] the voluntary manslaughter charge. The nolle prosequi provision was essential to the plea agreement because Layman would be ineligible for pretrial diversion if the voluntary manslaughter charge remained. Tenn. Code Ann. § 40-15-105(a)(1)(B)(iii)(*j*) (2006). At the first of two hearings regarding the plea agreement, the trial court expressed reluctance to allow pretrial diversion of a case in which violence resulted in the loss of life. At the second hearing, the trial court formally rejected the plea agreement.

The parties then filed an application for pretrial diversion and a supporting memorandum of understanding. The memorandum of understanding included a "notice"[5] of nolle prosequi regarding the voluntary manslaughter charge. In the "notice" of nolle prosequi, the district attorney stated that the "State cannot prove knowing killing as opposed to recklessness." At the resulting hearings, the prosecutor continued to assert that the State could not prove the mental element of the voluntary manslaughter charge. The trial court expressed its view of a judge's role in reviewing a nolle prosequi stating, "I have to accept a nolle prosequi . . . unless I know there is clear and convincing evidence that the activity in the indictment [is] such that . . . the defendant may constitute a danger

---

[2] Layman's statement does not provide an explanation for moving the body. The prosecutor stated that Layman moved the body in the hope that it would be more easily discovered in another room.

[3] No significant changes have occurred in the language of the pertinent provisions of the statute since 2003 when the offense was allegedly committed.

[4] "The Latin phrase 'nolle prosequi' literally means 'I am unwilling to prosecute.'" State v. Harris, 33 S.W.3d 767, 769 n.3 (Tenn. 2000) (quoting Korematsu v. United States, 584 F. Supp. 1406, 1410 (N.D. Cal. 1984)). This Court has defined nolle prosequi as the formal entry of record in which the district attorney general terminates the prosecution of a case. Id.

[5] Because, as discussed below, a prosecutor's request to nolle prosequi requires permission of the court, we will treat the "notice" as a motion to nolle prosequi.

to the community." The trial court later stated, "I cannot find by clear and convincing evidence that this woman would again constitute a threat to the community because I do not think that is [the case] here. It is just the opposite." However, at the final hearing on the matter, the trial court expressed a concern for the precedent that would be set by allowing diversion and a desire to assure the public that the courts take seriously the "taking of life." As a result, the trial court rejected the request to nolle prosequi, concluding that it would be in the "manifest best interest of the general public" to have the voluntary manslaughter charge tried by a jury.

At the March 3, 2004 hearing, the trial court engaged in a prolonged and wide-ranging exchange with several members of Powers' family. The family members' statements contained hearsay, were not made under oath, and were not subject to cross-examination. Counsel for Layman moved to have the family members' statements stricken from the record, and the trial court rejected the motion. At a subsequent hearing, the trial court allowed unidentified people to express opinions regarding the facts of the case, the threat Layman poses to society, and appropriate methods of punishment. None of those who offered statements were placed under oath or cross-examined. At the final hearing on the matter, the trial court discussed at length the standard for rejecting a nolle prosequi with the attorney for Powers' family, who argued vigorously that the charges against Layman should not be diverted.

On appeal, both the State and Layman argued that the trial court erred by rejecting the nolle prosequi of the voluntary manslaughter charge. The Court of Criminal Appeals disagreed with the prosecutor's assessment that the evidence was insufficient to prove voluntary manslaughter. Furthermore, the Court of Criminal Appeals found that due to the seriousness of the crime of voluntary manslaughter, "the dismissal of the indictment is clearly contrary to the manifest public interest" and, therefore, held that the trial court did not err by refusing to dismiss the voluntary manslaughter charge.

In addition, Layman argued that the trial court denied Layman's due process right to a fair hearing by considering the opinions and arguments of Powers' family members and their attorney. The Court of Criminal Appeals examined article I, section 35 of the Tennessee Constitution, which guarantees victims of crime "[t]he right to be heard, when relevant, at all critical stages of the criminal justice process as defined by the General Assembly." Finding that the hearings in question were "critical stages of the criminal justice process," the Court of Criminal Appeals concluded that the statements of Powers' family were consistent with the purposes of the Victims' Bill of Rights.[6] The Court of Criminal Appeals also found significance in the fact that the trial court did not consider the statements of the various family members as evidence or rely upon the pleadings filed by their attorney. The Court of Criminal Appeals therefore rejected Layman's due process argument and affirmed the ruling of the trial court in all respects.

---

[6] Tenn. Code Ann. §§ 40-38-101 to -406 (2006). No significant changes have occurred in the language of the pertinent provisions of the statute since 2003 when the offense was allegedly committed.

## B.  State v. Taylor

On December 31, 2003, Patricia Lynn Taylor ("Mrs. Taylor") returned home to find her husband, Jonathan Ray Taylor ("Taylor"), angry and brandishing a gun.  Some time later, the gun discharged a single time, hitting Mrs. Taylor in the arm.[7]  Mrs. Taylor died as a result of the injury.  Taylor maintains that he did not intentionally fire the gun.

On February 3, 2004, a grand jury indicted Taylor for second degree murder and reckless homicide.  The parties later reached a plea agreement in which Taylor agreed to plead guilty to reckless homicide and the State agreed to nolle prosequi the second degree murder charge.  The trial court rejected the plea agreement "because a life [was] taken, and there [was] violence."

On July 1, 2004, the State filed a "notice"[8] of nolle prosequi stating that the failure to prosecute Taylor for second degree murder was not conditioned on the trial court's acceptance of the plea agreement.  According to the "notice," the nolle prosequi was based on "an absence of proof beyond a reasonable doubt of the intent required for second-degree murder."  The "notice" stated that upon dismissal of the second degree murder charge the State would proceed to trial on the remaining charge of reckless homicide.  At the resulting hearing, the prosecutor continued to assert that the nolle prosequi was not contingent upon the acceptance of the plea and that the State could not carry its burden of proof on the charge of second degree murder.  Specifically, the prosecutor claimed that Taylor "did not intentionally point the gun at the upper arm of the victim in order to kill her."  Nonetheless, the trial court, ostensibly pursuant to its discretion under Rule 48(a) of the Tennessee Rules of Criminal Procedure, rejected the nolle prosequi, stating,

> [The State] can nolle [prosequi] based upon the facts [as it] know[s] them to be, and I cannot . . . turn that down unless [there] is clear and convincing evidence.  As far as I am concerned, it is clear and convincing when somebody . . . point[s] a gun at someone and that gun goes off. . . .  That to me is a danger to society and should not be tolerated.  That is the reason for [rejecting the nolle prosequi].

In a later hearing, the trial court again rejected the nolle prosequi, for the first time reasoning that the State "[was] just attempting to do [in]directly what [it was] denied to do directly."

On appeal, both Taylor and the State contend that the trial court erred by rejecting the State's effort to nolle prosequi the second degree murder charge.  The Court of Criminal Appeals determined that the trial court made a clear showing of its reasons for rejecting the nolle prosequi.  Focusing on the trial court's contention that the State "[was] just attempting to do [in]directly what [it was] denied to do directly," the Court of Criminal Appeals concluded that the trial court's ruling was intended to prevent the State from circumventing the rejection of the plea agreement.

---

[7] The prosecutor speculated that the bullet might have ricocheted after entering the victim's arm, but the record contains no definitive explanation of why a gunshot wound to the arm resulted in the victim's death.

[8] We will treat the "notice" as a motion to nolle prosequi.  See supra note 5.

Furthermore, the Court of Criminal Appeals concluded that the trial court's ruling furthered the manifest public interest of protecting trial courts' ability to accept or reject plea agreements. As a result, the Court of Criminal Appeals held that the trial court did not abuse its discretion when it denied the motion to nolle prosequi the second degree murder charge.

## II. Analysis

### A. Rule 48(a)

After an indictment has been returned, Rule 48(a) of the Tennessee Rules of Criminal Procedure governs the dismissal or nolle prosequi of a criminal charge upon motion of the State. The rule states in pertinent part that "[t]he state may <u>by leave of court</u> file a dismissal of an indictment, presentment, information or complaint and the prosecution shall thereupon terminate."[9] Tenn. R. Crim. P. 48(a) (emphasis added). Although under common law the decision to nolle prosequi a case was entirely within the discretion of the prosecutor, Rule 48(a) requires the court's permission. <u>See</u> <u>State v. Harris</u>, 33 S.W.3d 767, 770 (Tenn. 2000). The rule sets forth no criteria to guide the court in the exercise of its discretion. We look to judicial interpretation of the phrase "by leave of court" to determine the scope of discretion afforded by Rule 48(a). Interpreting the analogous federal rule, the United States Court of Appeals for the Fifth Circuit has stated:

> [I]t seems altogether proper to say that the phrase "by leave of court" in Rule 48(a) was intended to modify and condition the absolute power of the Executive, consistently with the Framer's concept of Separation of Powers, by erecting a check on the abuse of Executive prerogatives. But this is not to say that the Rule was intended to confer on the Judiciary the power and authority to usurp or interfere with the good faith exercise of the Executive power to take care that the laws are faithfully executed. The rule was not promulgated to shift absolute power from the Executive to the Judicial Branch. Rather, it was intended as a power to check power. The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated. The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless <u>clearly contrary to manifest public interest</u>.

<u>United States v. Cowan</u>, 524 F.2d 504, 513 (5th Cir. 1975) (emphasis added).

---

[9] The General Assembly has amended Rule 48(a), effective July 1, 2006, to read, "With the court's permission, the state may terminate a prosecution by filing a dismissal of an indictment, presentment, information, or complaint. A dismissal may not be filed during the trial without the defendant's consent."

Citing Cowan, we adopted the "manifest public interest" standard in State v. Landers, 723 S.W.2d 950, 953 (Tenn. 1987). In that case, the grand jury indicted the defendants[10] for vehicular homicide, which carried a maximum penalty of five years, and vehicular homicide while under the influence of intoxicants, which carried a maximum penalty of twenty-one years. Under the then-applicable law, one of the prerequisites for pretrial diversion was that "the maximum punishment for the offense charged must be ten years or less." Landers, 723 S.W.2d at 951 (emphasis added) (citing Tenn. Code Ann. § 40-15-105(a)). In each case, the trial court denied the prosecutor's request to dismiss the greater charge and grant pretrial diversion on the lesser charge. We affirmed, stating that "the determination of whether a defendant is within or without the eligible class [for pretrial diversion] is irrevocably determined by the indictment." Id. at 952. Because the defendants' eligibility had already been conclusively determined by the indictment, we concluded that approval of pretrial diversion in those cases would undermine legislative intent with regard to pretrial diversion. Id. We therefore held that the prosecutor's request to dismiss the greater charge was clearly contrary to manifest public interest. Id. at 953.

The 1998 amendment to Tennessee Code Annotated section 40-15-105 changed subsections (a)(1)(A) and (a)(1)(B). Our pronouncement in Landers that an indictment irrevocably determines eligibility for pretrial diversion is no longer valid under the amended statute. Subsection 40-15-105(a)(1)(B) (2006)[11] sets forth the criteria for determining which defendants are eligible for pretrial diversion. The pertinent provision of the statute provides that a defendant may be eligible for pretrial diversion if "[t]he offense for which the prosecution is being suspended" is not one of those listed in subdivision (c). Tenn. Code Ann. § 40-15-105(a)(1)(B)(i)(c) (emphasis added). As we have often noted, "[w]e determine legislative intent from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000). Tennessee Code Annotated section 40-15-105(a), as amended, focuses not upon the charges set forth in the indictment but upon the offense for which pretrial diversion is sought. We therefore

---

[10] Landers was a consolidated case involving two defendants indicted on identical charges. Landers, 723 S.W.2d at 951.

[11] Tennessee Code Annotated section 40-15-105(a)(1)(B) (2006) provides in pertinent part:

(B)(i) For purposes of this section, "qualified defendant" means a defendant who meets each of the following requirements:

(*a*) The defendant has not previously been granted pretrial diversion under the provisions of this chapter or judicial diversion under the provisions of § 40-35-313;

(*b*) The defendant does not have a prior misdemeanor conviction for which a sentence of confinement is served or a prior felony conviction within a five-year period after completing the sentence or probationary program for the prior conviction; and

(*c*) The offense for which the prosecution is being suspended is not a Class A or Class B felony or a Class C felony as defined in subdivision (a)(1)(B)(iii), a sexual offense, driving under the influence of an intoxicant as prohibited by § 55-10-401, or vehicular assault as prohibited by § 39-13-106.

hold that a defendant's eligibility for pretrial diversion is determined not by the indictment, but rather by the charges existing against the defendant at the time the court rules on the memorandum of understanding seeking pretrial diversion.

This construction of the statute is consistent with our more recent decisions, such as State v. Harris, 33 S.W.3d 767, 770 (Tenn. 2000), discussing a prosecutor's discretion to dismiss charges. Cf. Ramsey v. Town of Oliver Springs, 998 S.W.2d 207, 209 (Tenn. 1999) ("The District Attorney General and only the District Attorney General can make the decision whether to proceed with a prosecution for an offense committed within his or her district."). In Harris, the grand jury originally indicted the defendant for aggravated assault. After the defendant applied for pretrial diversion, however, the grand jury returned a superseding indictment charging aggravated assault and attempted first degree murder, the latter being a "non-diversion" charge. The prosecutor sought leave of court to enter a nolle prosequi on the original indictment. In contrast to Landers where the defendants consented to the dismissal motions, the defendant in Harris opposed the nolle prosequi. The trial court denied the motion to nolle prosequi the original indictment and, apparently acting sua sponte, dismissed the superseding indictment. Again citing Cowan, we reaffirmed the "manifest public interest" standard. Harris, 33 S.W.3d at 770. Concluding that the trial court abused its discretion in denying the State's motion to nolle prosequi the original indictment, we stated:

> Given the high threshold that the trial court must meet before overruling the prosecutor's decision to nolle prosequi an indictment, the broad discretion granted to the trial court in other circumstances, such as evidentiary rulings, is inapplicable here. In order for appellate courts to affirm that the trial court's discretionary power to deny a motion to nolle prosequi is used only when the public interest is at stake, the trial court should provide a clear showing of its reasons for denying the motion and should ensure that the reasons are made part of the record. In this case, the trial court preserved no such showing on the record. The record does not reflect any manifest public interest sufficient to merit the trial court's restraint of the State's discretion; indeed, the trial court seems to have merely substituted its judgment for the State's regarding which of the two indictments should be pursued. Such a unilateral check of prosecutorial discretion, without apparent or articulated justification, is beyond the trial court's authority.

Id. at 770-71.

Regarding eligibility for pretrial diversion, we observed: "[A]s a result of our ruling today, the only indictment still viable on remand contains a count charging Harris with attempted first degree murder, a Class A felony. As long as that charge remains, Harris is not eligible for pretrial diversion." Id. at 772 (emphasis added) (footnote omitted). Thus, we implicitly recognized that, contrary to Landers, ineligibility for diversion may be cured by dismissal of the "non-diversion" charge. In light of the amendment to Tennessee Code Annotated section 40-15-105(a), our statement in Landers that approval of pretrial diversion in such cases would undermine legislative intent with regard to pretrial diversion is no longer accurate. We therefore overrule Landers to the extent it holds that a prosecutor's request to dismiss or nolle prosequi a greater, "non-diversion" charge, thus

-8-

making the defendant eligible for pretrial diversion based on a lesser charge, is clearly contrary to manifest public interest.

Because in <u>Harris</u> we found that the trial court abused its discretion based on its failure to articulate the reason for denying the motion to nolle prosequi, we left unanswered the question of what is meant by "manifest public interest." For guidance we look to federal cases interpreting this phrase.

In <u>Rinaldi v. United States</u>, 434 U.S. 22 (1977), the United States Supreme Court held that the discretion afforded a trial court under Federal Rule of Criminal Procedure 48(a) is primarily intended to protect a defendant from prosecutorial harassment, e.g., charging, dismissing, and recharging, when the government moves to dismiss an indictment over the defendant's objection. <u>Id.</u> at 30 n.15. The Supreme Court explicitly declined to decide whether a trial court has discretion to deny a dismissal motion to which a defendant has consented because, even assuming such discretion existed, the result in that case remained the same. <u>Id.</u> Specifically, the Supreme Court concluded that the prosecutor's uncontested motion to dismiss was not filed in bad faith. <u>Id.</u> at 30. Because the motion to dismiss was based on the government's policy against needless multiple prosecutions, the motion was not motivated by considerations that could "fairly be characterized as 'clearly contrary to manifest public interest.'" <u>Id.</u> (citing <u>Cowan</u>, 524 F.2d at 513) (footnote omitted).

Those federal circuit courts reaching the question of whether a trial court may deny an uncontested dismissal motion have determined that the trial court's discretion under Rule 48(a) is limited to extraordinary circumstances indicating betrayal of the public interest, such as the prosecutor's acceptance of a bribe or personal dislike of the victim. <u>See</u> <u>United States v. Smith</u>, 55 F.3d 157, 159 (4th Cir. 1995); <u>United States v. Hamm</u>, 659 F.2d 624, 629-30 (5th Cir. Unit A Oct. 1981). The narrow scope of the trial court's discretion does not extend to disagreement with the prosecutor's assessment of what penalty the defendant should face. <u>United States v. Jacobo-Zavala</u>, 241 F.3d 1009, 1014 (8th Cir. 2001).

Although a federal district court is vested with only limited discretion to deny an independent motion to dismiss under Rule 48(a), when the dismissal is integral to a plea agreement, the court's discretion is much broader under the provisions of Rule 11 of the Federal Rules of Criminal Procedure governing judicial consideration of plea agreements. <u>See</u> <u>United States v. Pimentel</u>, 932 F.2d 1029, 1033 (2d Cir. 1991) (stating that the district court's discretion to reject a "charge bargain," i.e., a plea agreement to dismiss or amend one or more charges in exchange for a guilty plea to the reduced charges, is more akin to its discretion over sentencing matters than its more limited discretion to refuse to grant a Rule 48(a) motion to dismiss an indictment); <u>United States v. Bean</u>, 564 F.2d 700, 704 (5th Cir. 1977) (holding that although the plea bargain was cast in the form of a dismissal of a count, the district judge properly exercised reasonable discretion in rejecting the plea bargain in order to impose an appropriate sentence); <u>see generally</u> <u>Hoskins v. Maricle</u>, 150 S.W.3d 1, 22-24 (Ky. 2004) (discussing different degrees of discretion afforded a federal district court under Rules 11 and 48). However, a trial court may not deny an independent motion under Rule 48(a) to dismiss one count of a charging document on the ground that the remaining count does not reflect the gravity of the offense, even when the trial court has previously rejected a plea

agreement for the same reason.  See In re United States, 345 F.3d 450, 453 (7th Cir. 2003); see also United States v. Martin, 287 F.3d 609, 623 (7th Cir. 2002) (upholding trial court's rejection of plea agreement but noting that the prosecutor could have effectuated the same result the plea agreement sought by moving to dismiss the other counts with prejudice under Rule 48(a) and having the defendant plead guilty to the remaining count).

We have previously recognized that a trial court has discretion under Rule 11 of the Tennessee Rules of Criminal Procedure to reject a plea agreement on the ground that the proposed sentence is too lenient under the circumstances.  See State v. Hines, 919 S.W.2d 573, 578 (Tenn. 1995).  In that case, the defendant was convicted of felony murder and sentenced to death.  On appeal, the conviction was affirmed, but the case was remanded for resentencing.  During the resentencing hearing, the defendant and the State reached a plea agreement under which the defendant would receive a life sentence to be served consecutively to a life sentence for a separate offense to which the defendant would plead guilty.  Although we concluded that the trial court did not abuse its discretion by rejecting the plea bargain under Rule 11, we noted that the State was not required to receive permission from the trial court should it wish to withdraw its notice of intent to seek the death penalty.  Id. at 578 n.2.  Thus, we recognized that the prosecutor could do indirectly what the trial court had prevented him from doing directly under the plea bargain.

With these principles in mind, we turn to the facts of the cases before us.  The salient facts are the same in each case.  The trial court rejected the prosecutor's attempt to nolle prosequi the greater charge as part of a plea agreement.  Independent of a plea agreement, the prosecutor then filed a "notice" of, i.e., motion to, nolle prosequi the greater charge.  The defendant consented to the nolle prosequi.  The prosecutor's stated reason for the nolle prosequi was that the State could not carry the burden of proof as to the greater charge.  In Layman's case, the fact that the nolle prosequi of the greater charge was sought in conjunction with pretrial diversion on the lesser charge is not of legal significance in light of our overruling Landers.

The decision to nolle prosequi the greater charge in each case, based as it was on the State's assessment of the strength of the evidence, was not motivated by considerations clearly contrary to manifest public interest.  The record does not disclose bad faith on the part of the State at the time it sought leave to nolle prosequi the greater charge.  None of the reasons stated by the trial court or the Court of Criminal Appeals for rejecting the nolle prosequi – case too serious to avoid jury trial, penalty too lenient, State mistaken in its assessment of evidence, and dismissal would circumvent trial court's authority to reject plea agreement – suggest extraordinary circumstances indicating betrayal of the public interest.

Although the concerns enumerated by the trial court and the Court of Criminal Appeals may affect the public interest in a broad sense, these concerns do not address the primary issue of whether the prosecutor's uncontested motion to dismiss was filed in bad faith or motivated by considerations that could be fairly characterized as clearly contrary to manifest public interest.  The discretion inherent to the position of prosecutor will always have an impact on the public interest.  See Pace v. State, 566 S.W.2d 861, 867 (Tenn. 1978) (Henry, C.J., concurring) (noting that the office of District Attorney General is in a very real sense the most powerful office in Tennessee).  Moreover,

it is not the role of the trial or appellate courts to review the prosecutor's reasoned analysis of the facts of a case. To do so would be to "merely substitute[] its judgment for the State's" as prohibited by Harris. 33 S.W.3d at 771. Although the trial court may disagree with the decision to terminate the prosecution, that, in and of itself, is an insufficient reason to deny an uncontested motion to nolle prosequi. Accordingly, we conclude in each case that the trial court abused its discretion in rejecting the nolle prosequi.

## B. Victims' Rights

The second issue presented in Layman's case is whether the Victims' Bill of Rights affords a victim's family the right to be heard at pretrial hearings concerning a plea agreement and a nolle prosequi. For the reasons outlined below, we answer this question in the negative.

The Tennessee Constitution guarantees the victims of crimes and their families[12] a variety of rights. Of these rights, two are relevant in the instant case: "[t]he right to confer with the prosecution" and "[t]he right to be heard, when relevant, at all critical stages of the criminal justice process as defined by the General Assembly." Tenn. Const. art. I, § 35. The General Assembly, pursuant to its authority under article I, section 35, enacted legislation to implement victims' rights and define their key terms. With regard to the right to be heard, crime victims may be heard at "critical stages of the criminal justice process," which the General Assembly has defined as the following:

> (A) Bond hearings or bond reduction hearings if hearing from the victim is deemed relevant by the appropriate district attorney general;
>
> (B) The defendant's sentencing hearing;
>
> (C) Any hearing at which the issue of whether the defendant should pay restitution or the amount of restitution that should be paid is discussed; and
>
> (D) Any parole hearing at which the defendant's release on parole will be discussed or determined.

Tenn. Code Ann. § 40-38-302(2) (2006). With regard to the right to confer, the prosecutor is required to confer with the victim before the final disposition of a criminal offense and before the commencement of a trial. Id. § 40-38-114(a) to (b). However, the failure of a prosecutor to confer with the victim will not affect the validity of plea agreements or any other disposition of the case. Id. § 40-38-114(d). Furthermore, the right to confer does not include the authority to direct the prosecution of the case. Id. § 40-38-114(c). With these considerations in mind, we turn to the particular facts of the case before us.

---

[12] If a person against whom the crime is committed is deceased, then a family member of that person may meet the definition of "victim." Tenn. Code Ann. § 40-38-302(4)(A) (2006).

-11-

During several hearings concerning the nolle prosequi, the trial court allowed members of the Powers family to express opinions regarding the facts of the case, the threat Layman poses to society, and appropriate methods of punishment. Although the trial court made no explicit findings with regard to the propriety of the statements made by members of Powers' family, it appears their statements were allowed out of a belief that the hearings were each "critical stages of the criminal justice process" at which the family had a right to be heard. The Court of Criminal Appeals concluded that the hearings in question were "critical stages of the criminal justice process." We disagree. The General Assembly has listed the proceedings that are "critical stages of the criminal justice process." Tenn. Code Ann. § 40-38-302(2) (2006). Hearings concerning plea agreements and nolle prosequis are notably absent from the list of proceedings at which victims have a right to be heard. Id. It is a long-recognized rule of statutory construction that "the mention of one subject in a statute means the exclusion of other subjects that are not mentioned." Carver v. Citizen Utils. Co., 954 S.W.2d 34, 35 (Tenn. 1997). On appeal, the State argues that the pretrial hearings were "critical stages" under Tennessee Code Annotated section 40-38-302(2)(C) because the rejected plea agreement contained a clause regarding restitution. This argument is without merit. The plea agreement is not part of the record before us, and we are therefore unable to find that it includes a provision regarding restitution. Furthermore, the record does not reflect that restitution was considered at any of the hearings or that the Powers family was heard on that issue. The mere fact that the plea agreement may have ordered payment of restitution is insufficient to bring these hearings within the scope of Tennessee Code Annotated section 40-38-302(2)(C). We therefore conclude that Tennessee Code Annotated section 40-38-302(2) provides victims no right to be heard at the pretrial hearings in this case.[13]

The State also argues that the trial court impermissibly allowed the Powers family to direct the prosecution of the case by permitting their attorney to participate in the hearing. We agree. The "right to confer" as defined by the General Assembly does not allow victims or their attorneys to appear before the court and offer legal arguments in opposition to those of the prosecutor. Tenn. Code Ann. § 40-38-114(c). We conclude that the participation of the Powers family's attorney in the pretrial hearing exceeded the right to confer granted to victims under the Tennessee Constitution.

Although the victim's family did not have the right to be heard at the pretrial hearings concerning the plea agreement and nolle prosequi, we conclude that any error was harmless. The trial court made it clear that it did not base its rejection of the nolle prosequi and pretrial diversion on the representations or arguments made by the victim's family or their attorney. There is nothing in the record establishing that Layman was harmed by any participation by the victim's family.

---

[13] We express no opinion with regard to the parties' argument that the right to be heard does not include an ability to offer unsworn testimony, hearsay evidence, or testimony not subject to cross-examination. Because there is no right to be heard in the instant case, these issues are unnecessary to the determination of the issue before us.

### III. Conclusion

We hold that a defendant's eligibility for pretrial diversion is determined not by the indictment, but rather by the charges existing against the defendant at the time the court rules on the memorandum of understanding seeking pretrial diversion. We further hold that in each case, because the prosecutor's independent, uncontested motion to nolle prosequi the greater charge of the indictment was neither filed in bad faith nor motivated by considerations clearly contrary to manifest public interest, the trial court abused its discretion in rejecting the nolle prosequi. Finally, in Layman's case, we hold that any error in allowing the victim's family to be heard at the pretrial hearing concerning the plea agreement and nolle prosequi was harmless. Accordingly, we reverse the judgments of the trial court and the Court of Criminal Appeals in each case and remand for further proceedings consistent with this opinion. Costs of this appeal are taxed to the State of Tennessee.

_____
JANICE M. HOLDER, JUSTICE