IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 1, 2019

## JAMES M. MORRIS v. TENNESSEE BOARD OF PROBATION & PAROLE

**Appeal from the Chancery Court for Davidson County**
**No. 16-1018-I       Claudia Bonnyman, Chancellor**

————————————————————

**No. M2018-01998-COA-R3-CV**

————————————————————

This appeal involves a petition for writ of certiorari filed in chancery court by a prisoner after he was denied parole. The chancery court concluded that the petition was timely filed but found that the issues presented were moot and lacked substantive merit. The prisoner appeals. For the following reasons, we affirm the trial court's order of dismissal on other grounds.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

CARMA D. MCGEE, J., delivered the opinion of the court, in which RICHARD H. DINKINS, and JOHN W. MCCLARTY, JJ., joined.

James M. Morris, Mountain City, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Pamela S. Lorch, Senior Assistant Attorney General, for the appellee, Tennessee Board of Probation and Parole.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

James M. Morris is an inmate currently incarcerated at Northeast Correctional Complex in Mountain City, Tennessee. In 1988, he pled guilty to the offenses of second degree murder and robbery armed with a deadly weapon. Morris was sentenced to thirty-five years for the offense of second degree murder and fifteen years for the offense of robbery armed with a deadly weapon, to be served consecutively, for an effective

sentence of fifty years.

Over the course of his incarceration, Morris has been denied parole on numerous occasions. He had another parole hearing on June 2, 2016. On June 7, 2016, the Board of Probation and Parole provided Morris with a document entitled "Offender Hearing Decision Notification" officially notifying him of its decision to decline parole based on the seriousness of his offense. His next parole review date was set for December 2017. The notification informed Morris of his appeal rights and stated,

> In order to be considered for an appellate review, a written request must be received within forty-five (45) days from the date this decision is signed. The request must be mailed to: Board of Parole, Attn: Appeals Unit, 404 James Robertson Parkway, Suite 1300 Nashville, TN[.]

Morris signed the notification on June 7, 2016.

The forty-five day period for appeal ended on July 22, 2016. Morris submitted a "Request for Appeal Hearing" to the Board, but it was not received by the July 22 deadline. On July 28, 2016, the Board sent Morris a letter stating that it had received his request for an appeal but that it was deemed null and void because it was not received by the Board within forty-five days after he signed the notification. Accordingly, the Board informed Morris that the time period for an administrative appeal had lapsed, and he had no further appeal recourse through the Board.

On September 16, 2016, Morris filed a petition for writ of certiorari in the chancery court of Davidson County, seeking review of the Board's decision from the June 2016 hearing. Morris argued that his administrative appeal to the Board was timely because, according to Morris, he delivered his administrative appeal to the prison post office on July 19, 2016, three days prior to the expiration of the forty-five day appeal period. Morris argued that his administrative appeal should have been deemed timely pursuant to Tennessee Rule of Civil Procedure 5.06 and/or Tennessee Rule of Appellate Procedure 20(g), commonly known as the prison mailbox rule. Morris also argued that the Board committed two procedural errors in the conduct of his parole hearing. First, he argued that the Board erred in allowing family members of the victim of his crimes to attend the parole hearing "by satellite." Additionally, Morris argued that the Board acted illegally by finalizing its parole hearing decision based on the concurrence of three members of the Board. Morris argued that four votes were required pursuant to Tennessee Code Annotated section 40-28-105(d). Morris asked the chancery court to review the record of the parole hearing and to order the Board to conduct another parole hearing in accordance with the governing policies and law. Morris attached numerous documents to his petition.

On December 20, 2017, while the petition was still pending, Morris filed a motion

for stay in the chancery court. His motion stated that the Board had held another parole hearing on or about November 28, 2017, and the Board had again denied him parole. Morris asserted that he intended to appeal the decision of the Board within forty-five days and was in the process of preparing his administrative appeal. He asked the chancery court to stay its decision pending the outcome of the administrative appeal process before the Board with respect to his most recent hearing.

On October 11, 2018, the chancery court entered a memorandum opinion and final order dismissing the petition filed by Morris. The chancery court concluded that the entire case should be dismissed as moot because the remedy sought by Morris – another parole hearing – had already taken place. Thus, the chancery court reasoned that Morris had already received the remedy he sought, and the court could no longer grant him a remedy. Despite this finding regarding mootness, the chancery court went on to address the substantive merit of the arguments presented by Morris and make alternative rulings regarding each of those grounds. The trial court concluded that the Board erred in deeming his administrative appeal as untimely. The trial court found that the appeal was "timely filed" on the date when it was submitted to the prison mailroom. Regarding the merits, the trial court found that the Board acted properly by allowing the victim's family to attend the parole hearing via videoconference because victims' families are given the right to participate by statute. Finally, the chancery court found that the Board properly used the three-vote rule to decide whether Morris should be paroled based on the type of sentence that Morris was serving at the time. Morris timely filed a notice of appeal to this Court.

## II. ISSUES PRESENTED

Morris presents the following issues, as we perceive them, for review on appeal:

1.      Whether the chancery court erred in holding that the entire case was moot and subject to dismissal due to the subsequent parole hearing;

2.      Whether the chancery court erred in concluding that the Board acted properly by allowing the victim's family to attend the parole hearing by videoconference; and

3.      Whether the chancery court erred in holding that the Board properly determined whether Morris should be paroled with the concurrence of three Board members.

In its posture as appellee, the Board argues that the chancery court should have dismissed the petition for writ of certiorari for lack of subject matter jurisdiction because the administrative appeal filed by Morris was untimely and did not toll the sixty-day period for filing the petition. For the following reasons, we affirm the chancery court's order of

dismissal, albeit on different grounds.[1]

## III. STANDARD OF REVIEW

"'The entity empowered with the discretion and authority to determine whether an inmate will receive parole is the Board of Probation and Parole, not the judiciary.'" *Hendricks v. Tenn. Bd. of Prob. & Parole*, No. M2010-01651-COA-R3-CV, 2011 WL 2135445, at *1 (Tenn. Ct. App. May 25, 2011) (quoting *Harris v. Tenn. Bd. of Probation & Parole*, No. M2009-01904-COA-R3-CV, 2010 WL 3219491, at *3 (Tenn. Ct. App. Aug. 13, 2010)). "Judicial review of a parole decision made by the Board is narrow; it is limited to consideration of whether the Board exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently." *Brennan v. Bd. of Parole*, 512 S.W.3d 871, 873 (Tenn. 2017) (citing Tenn. Code Ann. § 27-8-101; *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012); *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003)). A reviewing court considers only the manner in which the Board reached its decision. *Id.* The court "does not inquire into the intrinsic correctness of the Board's decision, reweigh the evidence, or substitute its judgment for that of the Board." *Id.* (citing *State v. Lane*, 254 S.W.3d 349, 355 (Tenn. 2008); *Robinson v. Clement*, 65 S.W.3d 632, 635 (Tenn. Ct. App. 2001)).

## IV. DISCUSSION

We begin with the issue raised by the Board regarding the timeliness of the administrative appeal and petition for writ of certiorari filed by Morris because those issues implicate the subject matter jurisdiction of the chancery court. Tennessee Code Annotated section 40-28-105(d)(11) provides, in pertinent part:

> Inmates . . . who have been denied parole . . . may request an appellate review by the board. The board shall establish a reasonable time limit for filing of the request. If the time limit is not met, the request for an appellate review will be denied.

In accordance with this statute, the "Rules and Regulations of the Tennessee Board of Parole" provide:

> (4) Appellate Procedure.

---

[1] "The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result." *Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 302 n.31 (Tenn. Ct. App. 2007); *see also Rogers v. Memphis City Schools*, No. 02A01-9604-CV-00066, 1997 WL 675194, at *4 (Tenn. Ct. App. Oct. 29, 1997).

(a) An inmate whose parole has been . . . denied may request an appellate review by the Board.  Requests for an appellate review must be received by the Board within forty-five (45) days from the date the inmate signed the decision notification indicating that he or she has received notice of the decision.

(b) If the request for an appeal is not received within forty-five (45) days from the date the inmate signed the decision notification, it will be denied.

Tenn. Comp. R. & Regs. 1100-01-01-.08(4).

Here, the parole hearing was held on June 2, 2016.  Morris signed the "Offender Hearing Decision Notification" on June 7, 2016.  That notification provided:

In order to be considered for an appellate review, a written request must be received within forty-five (45) days from the date this decision is signed. The request must be mailed to: Board of Parole, Attn: Appeals Unit, 404 James Robertson Parkway, Suite 1300 Nashville, TN[.]

The Board did not receive a request for appeal from Morris within the forty-five day period, which ended on July 22, 2016.  However, Morris claims that he delivered his appeal to the prison post office on July 19, 2016, three days before the period expired. Focusing on this date, Morris claims that his appeal should have been considered timely pursuant to Tennessee Rule of Civil Procedure 5.06 and/or Tennessee Rule of Appellate Procedure 20(g).  Such Rules are often called prison mailbox rules.  *See, e.g.*, *Butler v. State*, 92 S.W.3d 387, 390 (Tenn. 2002).[2]

Tennessee Rule of Civil Procedure 5.06 provides:

If papers required or permitted to be filed pursuant to the rules of civil procedure are prepared by or on behalf of a pro se litigant incarcerated in a correctional facility and are not received by the clerk of the court until after the time fixed for filing, filing shall be timely if the papers were delivered to the appropriate individual at the correctional facility within the time fixed for filing. This provision shall also apply to service of paper by such litigants pursuant to the rules of civil procedure. . . .

The comparable Rule of Appellate Procedure provides:

(g) Filing by Pro Se Litigant Incarcerated in Correctional Facility. If papers

---

[2] Other prison mailbox rules can be found at Tennessee Supreme Court Rule 28 section 2(G) and Tennessee Rule of Criminal Procedure 49.

required or permitted to be filed pursuant to the rules of appellate procedure are prepared by or on behalf of a pro se litigant incarcerated in a correctional facility and are not received by the clerk of the court until after the time fixed for filing, filing shall be timely if the papers were delivered to the appropriate individual at the correctional facility within the time fixed for filing. This provision shall also apply to service of papers by such litigants pursuant to the rules of appellate procedure. . . .

Tenn. R. App. P. 20(g). The chancery court acknowledged that Tennessee Rule of Civil Procedure 5.06 was "not directly at issue here," but it nevertheless found the Rule "instructive." The chancery court found that Morris signed his request for an appeal hearing on July 19, 2016, three days before the forty-five day deadline. The court found that the documents in the record were consistent with the claim by Morris that he gave his appeal to the prison mailroom "on or about July 19, 2016," as the outgoing mail receipt appeared to be dated July 20, 2016.[3] As a result, the chancery court concluded that the administrative appeal "was timely filed on July 19, 2016." We respectfully disagree with this conclusion.

Morris could not take advantage of the prison mailbox rules provided by Tennessee Rule of Civil Procedure 5.06 or Tennessee Rule of Appellate Procedure 20(g). Those prison mailbox rules, by their terms, are applicable to papers "filed pursuant to" those Rules. *See* Tenn. R. Civ. P. 5.06; Tenn. R. App. P. 20(g). Those Rules do not govern the parole hearing administrative appeal process before the Board. *See* Tenn. R. Civ. P. 1; Tenn. R. App. P. 1. Moreover, the Rules that do govern the Board do not include a comparable prison mailbox rule. Instead, they unequivocally provide that requests for appellate review "must be *received* by the Board within forty-five (45) days from the date the inmate signed the decision notification," and if the appeal request "is not received" by the Board within those forty-five days, the appeal request "will be denied." Tenn. Comp. R. & Regs. 1100-01-01-.08(4) (emphasis added). In the absence of an applicable prison mailbox rule, the chancery court erred in applying the same underlying rationale to deem the administrative appeal timely. *Compare Compton v. Tenn. Dep't of Corr.*, No. M1997-00066-COA-R3-CV, 1999 WL 1086334, at *2 (Tenn. Ct. App. Dec. 3, 1999) (explaining that Tennessee Rule of Civil Procedure 5.06 could not be applied to papers filed by a prisoner before the Rule became effective, and therefore, "placing the petition in the hands of the prison officials" was not a timely filing).

Admittedly, Morris attempted to mail his appeal paperwork from the prison in Mountain City to the Board in Nashville no more than three days before the deadline for

---

[3] The outgoing mail receipt is illegible to this Court. It includes a handwritten notation of "7-2[illegible]-16." Another document in the record indicates that Morris signed a "Trust Fund Account Personal Withdrawal Request" for "Parole Appeal Postage" on July 19, 2016, and it was signed as approved on July 20.

receipt. Because the Board did not receive his appeal by the forty-five day deadline, it was untimely. *See* Tenn. Code Ann. § 40-28-105(d)(11) ("If the time limit is not met, the request for an appellate review will be denied.") The Board correctly determined that the time period for administrative appeal had lapsed.

Next, we must examine the effect of the untimely administrative appeal. Morris filed his petition for writ of certiorari in chancery court on September 16, 2016, alleging that several errors occurred with respect to his June 2016 parole hearing. "The common-law writ of certiorari serves as the proper procedural vehicle through which prisoners may seek review of decisions by prison disciplinary boards, parole eligibility review boards, and other similar administrative tribunals." *Willis*, 113 S.W.3d at 712. Accordingly, "[t]he avenue of review for a prisoner aggrieved by a decision of the [] Board of Probation and Parole is the common law writ of certiorari." *Johnson v. Tenn. Dep't of Corr.*, No. E2016-02260-COA-R3-CV, 2017 WL 3396545, at *3 (Tenn. Ct. App. Aug. 8, 2017). However, a petition for writ of certiorari must be filed "within sixty (60) days from the entry of the order or judgment." Tenn. Code Ann. § 27-9-102. This sixty-day time limit is "mandatory and jurisdictional, and the failure to file a petition within that period of time deprives the court of subject matter jurisdiction." *Jackson v. Tenn. Dep't of Corr.*, 240 S.W.3d 241, 246 (Tenn. Ct. App. 2006) (quotation omitted). "The failure to file within the statutory time limits results in the Board's decision becoming final[.]" *Thandiwe v. Traughber*, 909 S.W.2d 802, 804 (Tenn. Ct. App. 1994).

A prisoner's untimely request for an administrative appeal before the Board does not toll the running of the sixty-day period for filing a petition for writ of certiorari. *McLemore v. Traughber*, No. M2007-00503-COA-R3-CV, 2007 WL 4207900, at *3 (Tenn. Ct. App. Nov. 28, 2007); *Turner v. Tenn. Bd. of Paroles*, 993 S.W.2d 78, 80 (Tenn. Ct. App. 1999); *West v. Tenn. Bd. of Paroles*, No. 01A01-9604-CH-00362, 1997 WL 5179, at *2 (Tenn. Ct. App. Jan. 8, 1997). Because Morris sought review of his June 2016 parole hearing by filing a petition for writ of certiorari on September 16, 2016, we agree with the Board's position that the chancery court should have dismissed the petition as untimely.

Even though we have concluded that the petition was not timely filed, we have examined the substance of the claims presented in the petition and found that they lacked merit in any event.[4] First, Morris complained that the family members of the victim were permitted to participate in the parole hearing via videoconference. Morris argues that the Board violated its "policy, procedures, rules and regulations" and acted in a biased

---

[4] We disagree with the chancery court's conclusion that the substantive issues raised in the petition are now moot because Morris had a subsequent parole hearing in November 2017. The record does not reveal whether the alleged procedural errors of which Morris complained were repeated in the subsequent hearing. Accordingly, his complaints are not necessarily moot simply because another hearing was conducted.

manner. According to Morris, the victim's relatives were permitted to attend by satellite because they would have had to travel a lengthy distance to attend the hearing in person. Morris argues that the Board should have required some sort of written medical documentation establishing that the family members were physically unable to be present before allowing satellite participation.

One of the factors the Board may consider when deciding whether to grant or deny parole is the view of the victim of the crime or his or her family. *Brennan*, 512 S.W.3d at 876 n.5; Tenn. Comp. R. & Regs. 1100-01-01-.07(1)(g). Victims and their families have special rights in Tennessee:

> [I]n 1998, voters approved an amendment to the Tennessee Constitution guaranteeing victims a variety of rights, including "[t]he right to be present at all proceedings where the defendant has the right to be present" and "[t]he right to be heard, when relevant, at all critical stages of the criminal justice process as defined by the General Assembly." Tenn. Const. art. I, § 35. The General Assembly implemented article I, section 35, by defining key terms by statute. Tenn. Code Ann. § 40-38-301(a) (2014). Pertinent to this appeal, the General Assembly defined "critical stages of the criminal justice process" to include "[a]ny parole hearing at which the defendant's release on parole will be discussed or determined" and "victim" to mean a family member if the victim is deceased. *Id.* § 40-38-302(2)(E), (4)(A)(iii). Consequently, since 1998, victims or their families, if the victim is deceased, have the right to attend and be heard at parole hearings.

*York v. Tenn. Bd. of Parole*, 502 S.W.3d 783, 791-92 (Tenn. Ct. App. 2016); *see also State v. Layman*, 214 S.W.3d 442, 453 (Tenn. 2007). In furtherance of these rights, Tennessee Code Annotated section 40-35-503(d)(2) provides that during parole hearings, "the board shall permit the video testimony of the immediate family members of the victim of a defendant's criminal offense relative to the fitness of the defendant for parole, if the family members are unable to attend the hearing."

The statute provides that "[t]he board *may*, by rule, establish reasonable guidelines as to what constitutes a family member being unable to attend a hearing." *Id.* (emphasis added). However, this language is permissive. *See Steppach v. Thomas*, 346 S.W.3d 488, 505 (Tenn. Ct. App. 2011) ("The word 'may' used in a statute ordinarily connotes discretion or permission and will not be treated as a word of command, unless there is something in the context of the subject matter of the statute under consideration to indicate that it was used in that sense.") (quotation omitted). We reject the suggestion by Morris that the Board was required to establish a rule regarding family member attendance by videoconference or that such a rule must be limited to medical necessity. Morris concedes in his brief that the family members of his victim would have had to travel eighteen hours in order to attend his parole hearing in person. We cannot say that

the Board acted illegally, arbitrarily, or in a biased manner by permitting them to participate in the hearing by videoconference.

Finally, Morris argues that the Board should have acted with the concurrence of four Board members, rather than three, in deciding whether he should be granted or denied parole. At the time of his parole hearing, Morris had already completed serving his thirty-five year sentence for second degree murder, and he was then serving his fifteen year sentence for the offense of robbery armed with a deadly weapon. Effective January 1, 1998, Tennessee Code Annotated section 40-28-105(d)(3) was amended to require the concurrence of four board members, rather than three board members, to grant, deny, or rescind parole for persons convicted of certain specified offenses. *See Harris v. Traughber*, No. M2000-01146-COA-R3-CV, 2001 WL 788423, at *2-3 (Tenn. Ct. App. July 13, 2001). The list of offenses requiring four votes does not specifically reference robbery armed with a deadly weapon. *See* Tenn. Code Ann. § 40-28-105(d)(4). However, the robbery with a deadly weapon statute has been repealed since Morris was convicted. *See* Tenn. Code Ann. § 39-2-501 (repealed 1989); *Hedges v. State*, No. E2012-02557-CCA-R3-HC, 2013 WL 5744777, at *4 (Tenn. Crim. App. Oct. 21, 2013); *Coffelt v. State*, No. M2008-01038-CCA-R3-PC, 2009 WL 1676046, at *3 (Tenn. Crim. App. June 16, 2009).

The statute providing the list of offenses requiring four votes for parole states that the four-vote requirement "shall also apply to persons convicted of offenses repealed November 1, 1989, which would have constituted a conviction for one (1) of the enumerated offenses in subdivision (d)(4) had it been committed after November 1, 1989." Tenn. Code Ann. § 40-28-105(d)(5). Although the statute does not list robbery armed with a deadly weapon, it does list "Especially aggravated robbery" as an offense requiring four votes. *Id.* § 40-28-105(d)(4)(I). Therefore, we must determine whether the repealed offense of robbery armed with a deadly weapon would have constituted a conviction for especially aggravated robbery, as Morris suggests.

"Before 1989, our legislature prohibited 'robbery accomplished with a deadly weapon.'" *State v. Cooper*, No. 01C01-9708-CR-00368, 1998 WL 668263, at *2 (Tenn. Crim. App. Sept. 30, 1998) (citing Tenn. Code Ann. § 39-2-501 (Supp. 1989)). In order to be convicted of armed robbery pursuant to the statute, rather than the offense of simple robbery, "the state had to prove that the defendant actually possessed a deadly weapon when he or she accomplished the robbery." *Id.* The offense of robbery by use of a deadly weapon was a Class X Felony under Tennessee Code Annotated section 39-1-701 *et seq.* (1982) (repealed). *Tomlinson v. Tenn. Dep't of Corr.*, No. 01A01-9804-CH-00204, 1999 WL 270383, at *1 (Tenn. Ct. App. May 5, 1999). "In 1989, the Class X Felony Act was repealed and replaced by the Sentencing Reform Act of 1989." *Id.* (citing Tenn. Code Ann. § 40-35-101 *et seq.*).

Tennessee Code Annotated section 40-35-118(a) provides felony classifications to

be used for felony offenses in title 39 committed prior to the repeal in 1989. It states that "Robbery by use of a deadly weapon" is to be classified as a class B felony. Tenn. Code Ann. § 40-35-118(a); *see also State v. Hall*, No. W2009-02569-CCA-R3-CD, 2010 WL 5271082, at *12 (Tenn. Crim. App. Dec. 10, 2010) ("'robbery by use of a deadly weapon,' former section 39-2-501, is the equivalent of a Class B felony"); *Abston v. State*, No. 02C01-9807-CR-00212, 1998 WL 906475, at *1 n.2 (Tenn. Crim. App. Dec. 30, 1998) ("Under the Criminal Sentencing Reform Act of 1989, robbery by use of a deadly weapon was characterized as a Class B felony[.]")

Under the current statutory scheme, "Robbery" is a Class C felony defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401. By comparison, "Aggravated robbery" is a Class B felony, and it requires robbery accomplished with a deadly weapon *or* where the victim suffers serious bodily injury. Tenn. Code Ann. § 39-13-402. "Especially aggravated robbery" is a Class A felony. Tenn. Code Ann. § 39-13-403. It is defined as robbery accomplished with a deadly weapon *and* where the victim suffers serious bodily injury. *Id.*

The four-vote offense list only includes especially aggravated robbery, not aggravated robbery or robbery. *See* Tenn. Code Ann. § 40-28-105(d)(4). We conclude that the repealed offense of robbery armed with a deadly weapon, a Class B felony, would not necessarily constitute a conviction for especially aggravated robbery, a Class A felony. *See State v. Polk*, 845 S.W.2d 171, 172 n.2 (Tenn. 1992) (comparing the sentence range for "armed robbery" under the 1982 act with the sentence for "aggravated robbery" under the 1989 act). As a result, we reject the argument by Morris that four votes were required by Tennessee Code Annotated section 40-28-105(d)(4)(I).

Alternatively, Morris argues on appeal that four votes were required because at the end of the list of specific offenses requiring four votes, the statute also requires four votes for "[a]ny other offense for which punishment is life imprisonment." Tenn. Code Ann. § 40-28-105(d)(4)(AA). Morris argues that the offense of armed robbery, as it existed under prior law, *could have resulted* in a sentence of life imprisonment, even though he was only sentenced to fifteen years. However, Morris failed to raise this issue in his petition for writ of certiorari filed in chancery court. Instead, he relied exclusively on Tennessee Code Annotated section 40-28-105(d)(4)(I) and (K) (listing the offenses of especially aggravated robbery and second degree murder). As a result, we decline to address the argument on appeal. *See Rogers v. Payne*, No. E2010-00523-COA-R3-CV, 2010 WL 4272745, at *4 (Tenn. Ct. App. Oct. 28, 2010) *perm. app. denied* (Tenn. Mar. 10, 2011) (declining to consider issues not raised in the prisoner's petition for writ of certiorari); *Adams v. Tenn. Dep't of Corr.*, No. M2008-02475-COA-R3-CV, 2009 WL 4931367, at *2 n.1 (Tenn. Ct. App. Dec. 21, 2009) *perm. app. denied* (Tenn. June 18, 2010) ("these issues were not raised in [the prisoner's] petition for writ of certiorari, so we will not address them on appeal").

## V. CONCLUSION

For the aforementioned reasons, the chancery court's order of dismissal is affirmed.  Costs of this appeal are taxed to the appellant, James M. Morris, for which execution may issue if necessary.

_____
CARMA D. MCGEE, JUDGE